UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MATCONUSA LP,

          Plaintiff,

   v.

HOUSTON CASUALTY COMPANY,

          Defendants.

Case No. C19-1952 JLR-TLF

REPORT AND RECOMMENDATION

Noted for January 1, 2021

This matter comes before the Court on defendant Marsh USA Inc.'s ("Marsh") motion to dismiss (Dkt. 43) the allegations in the Second Amended Complaint (Dkt. 30) for failure to state a claim. The parties have briefed the issues, and the Court held oral argument. Dkt. 43, 44, 45, 46, 47, 48, 49, 50, 57. For the reasons set forth below, the Court should GRANT IN PART and DENY IN PART Marsh's motion to dismiss.

    I.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Plaintiff's Second Amended Complaint alleges that plaintiff was involved in a construction project in Seattle, Washington ("the Project"). Dkt. 30 at ¶ 7. Plaintiff states that as part of this Project, plaintiff enrolled as an insured in an Owner Controlled Insurance Program ("OCIP"). *Id.* The OCIP in this case was defined as a "coordinated

REPORT AND RECOMMENDATION - 1

master insurance program under which Commercial General Liability and Excess Liability are procured or provided on a project basis for Enrolled Parties for losses arising out of covered operations and completed operations at the OCIP Project Site." Dkt. 30 at ¶ 8; Dkt. 43-1 (1200 Stewart Project OCIP Insurance Manual).

The Second Amended Complaint states that the OCIP is comprised of various insurance forms issued by different insurance companies, including a primary general liability policy issued by defendant Houston Casualty Company ("Houston Casualty"). Dkt. 30 at ¶ 9. Plaintiff also states that it enrolled in a policy, outside of the OCIP, provided by Crum & Forster Specialty Insurance Company ("Crum & Forster"). *Id.* at ¶ 10. Plaintiff further maintains that the Crum & Forster policy was "a 'wasting policy' meaning that every dollar spent defending a claim depletes the policy's indemnity limit by that amount." *Id.* at ¶ 11.

The Second Amended Complaint contends that Marsh served as the "OCIP Administration/Insurance Broker" for the Project and prepared the 1200 Stewart Project OCIP Insurance Manual ("OCIP Manual"). Dkt. 30 at ¶¶ 12-13. The OCIP Manual is "meant to provide only a general overview of the OCIP for convenience of reference." Dkt. 43-1 at 4. According to the OCIP Manual, the OCIP provides "General Liability and Excess Liability" coverage for the Project "covering enrolled parties whose employees perform actual on-site labor at the Project site." *Id.* Additionally, the OCIP Manual states that the provisions of the manual: "(1) are subject in all respects to the terms and conditions of the actual insurance policies and related contracts between the parties and (2) shall in no manner alter, amend or affect the terms or provisions of such

REPORT AND RECOMMENDATION - 2

insurance policies or related contracts." *Id*. The OCIP Manual also lists Marsh employees as the OCIP Program Manager and OCIP Advisor. *Id*. at 5.

Pursuant to the OCIP Manual, if injuries to the public or damage to the property occurred within the construction perimeter and were related to the construction work, the insured were expected report the incident to Project Stewart, LLC (the Project owner) and Graham Construction (the general contractor) with a copy to Marsh. Dkt. 43-1 at 16. The OCIP Manual also states that Houston Casualty was responsible for all claim investigation and handling. *Id*.

Plaintiff states that in October 2018, Graham Construction alleged that plaintiff was liable for property damage and other damage at the Project. Dkt. 30 at ¶ 17. Plaintiff alleges that it immediately reported the claim to Houston Casualty and other OCIP insurers in the manner specified by the OCIP Manual, "by also sending a copy of the Claim to Marsh." *Id*. at ¶ 18. Plaintiff states that it also requested "defense and indemnity under all available OCIP coverages." *Id*. Plaintiff maintains that neither Houston Casualty nor Marsh ever responded to this first request for insurance benefits. *Id*. at ¶ 19.

The Second Amended Complaint alleges that in November 2018, Graham Construction asserted additional claims against plaintiff for purported property damage and began withholding money owed to plaintiff because of the alleged property damage. Dkt. 30 at ¶ 20. Plaintiff states that it reported these claims to Houston Casualty as specified in the OCIP Manual, emphasizing that this was an urgent matter. *Id*. at ¶ 21. Plaintiff contends that neither Houston Casualty nor Marsh responded to this second request for insurance benefits. *Id*. at ¶ 22.

REPORT AND RECOMMENDATION - 3

According to the Second Amended Complaint, Graham Construction terminated Matcon from the Project, withholding $3.7 million it contractually owed plaintiff, including $2.5 million for work already performed at the Project. Dkt. 30 at ¶ 23. Plaintiff states that it submitted a third request for defense and indemnity benefits but did not receive a response. Dkt. 30 at ¶¶ 24-25.

Plaintiff alleges that in February 2019, plaintiff filed a lawsuit against Graham Construction for failing to pay the sums that it owed plaintiff and Graham Construction filed a counterclaim against plaintiff for the purported property damage. Dkt. 30 at ¶ 26. Plaintiff states that it tendered the counterclaim to Houston Casualty and provided a copy of the counterclaim to Marsh, requesting all available defenses and indemnity benefits. *Id.* at ¶ 27. Plaintiff maintains that Houston Casualty and Marsh did not respond to this fourth request for insurance benefits. *Id* at ¶ 28.

Plaintiff contends that it also tendered the counterclaim to Crum & Forster which agreed to defend plaintiff under a complete reservation of rights, but refused to reimburse plaintiff for its pre-tender defense fees and costs. Dtkt. 30 at ¶¶ 29-30. Plaintiff alleges that plaintiff suffered harm and damages because of the absence of timely insurance benefits from Houston Casualty. *Id.* at ¶ 31. Plaintiff further alleges that either "Houston Casualty unreasonably failed to timely defend and provide other insurance benefits to Matcon, or Marsh unreasonably failed in its duties as the 'OCIP Administration/Insurance Broker' to notify Houston Casualty of Matcon's numerous requests for insurance benefits." *Id.* at ¶ 32.

The Second Amended Complaint raises two causes of actions against Marsh. Dkt. 30 at ¶¶ 55-63. The first cause of action is for negligence, alleging that Marsh

1  breached its duties to plaintiff by failing to notify Houston Casualty or other OCIP

2  insurance companies of plaintiff's requests for benefits. *Id.* at ¶¶ 55-57. The second

3  cause of action is for tortious interference with economic relations. *Id.* at ¶¶ 58-63.

4       Marsh has filed a motion to dismiss plaintiff's claims against Marsh pursuant to

5  Fed. R. Civ. P. 12(b)(6). Dkt. 43. Marsh's motion argues that plaintiff's negligence claim

6  should be dismissed because plaintiff fails to allege facts to make a plausible claim that

7  Marsh owed plaintiff a duty -- and because the claim is precluded under Washington's

8  independent duty rule. Dkt. 43 at 4-11. The motion also argues that plaintiff's tortious

9  interference claims should be dismissed under Rule 12(b)(6) for failing to state a claim.

10  *Id.* at 11-15.

11       Houston Casualty has opposed Marsh's motion and has filed the Declaration of

12  Neal J. Philip in support of its opposition to Marsh's motion to dismiss. Dkt. 44 (Houston

13  Casualty's Response in Opposition to Marsh's Motion to Dismiss); Dkt. 45 (Declaration

14  of Philip). Houston Casualty argues that plaintiff sufficiently stated a claim for

15  negligence against Marsh and takes no position with respect to plaintiff's tortious

16  interference claims. Dkt. 44.

17       Plaintiff also filed a response opposing Marsh's motion. Dkt. 46. In support of this

18  response, plaintiff filed the Declaration of Sylvia Bourgeois (Dkt. 47) and the Declaration

19  of Thomas M. Williams (Dkt. 48).

20       Marsh filed a reply brief in support of the motion to dismiss (Dkt. 49) and a reply

21  brief to Houston Casualty's opposition (Dkt. 50). Marsh argues that the Court should not

22  consider the evidence proffered by plaintiff and Houston Casualty because the evidence

23  is not appropriate for consideration under a Rule 12(b)(6) analysis. Dkt. 49, 50.

24

25

REPORT AND RECOMMENDATION - 5

II.   DISCUSSION

In a case based on diversity jurisdiction, the court applies state substantive law, but applies federal procedural law. *Gasperini v. Ctr. For Humanities, Inc.,* 518 U.S. 415, 426-427 (1996). When reviewing a motion under Rule 12(b)(6), the Court must accept as true "all well-pleaded allegations of fact in the complaint and construe them in the light most favorable to the non-moving party." *Cedar Point Nursery v. Shiroma*, 923 F.3d 524, 530 (9th Cir. 2019) (internal quotations omitted). The court is not required to accept legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a 12(b)(6) motion, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A claim is plausible on its face if the pleaded facts allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft,* 556 U.S. at 678. When evaluating an Fed. R. Civ. P. 12(b)(6) motion, the court may only consider the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice. *Cedar Point Nursery*, 923 F.3d at 530; *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 998-99, 1002-03 (9th Cir. 2018). The Court does not resolve factual disputes at the pleading stage. *Khoja,* at 1003.

A.   Documents considered incorporated by reference

In support of their respective positions, the parties have submitted certain information -- outside the four corners of the Second Amended Complaint. For the reasons set forth below, the undersigned recommends that the Court can properly

1  consider Documents: 43-1, 47-1, 47-2, 47-3, 47-4, 47-5, 48-2, 48-7 and 49-1. However,
2  the Court should not consider Documents: 45-1, 45-2, 45-3, 45-4, 45-5, 45-6, 45-7, 48-
3  1, 48-3, 48-4, 48-5, and 48-6.

4  Although a district court generally may not consider information outside the
5  pleadings when evaluating a CR 12(b)(6) motion to dismiss for failure to state a claim,
6  there are exceptions; the Court may consider documents that are subject to judicial
7  notice, and may consider documents that are within the boundaries of incorporation-by-
8  reference doctrine. *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d at 1002; *Lee v. City
9  of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001).

10  Under Rule 201 of the Federal Rules of Evidence, the district court may notice an
11  adjudicative fact if it is "not subject to reasonable dispute"; this test is satisfied if the fact
12  is "generally known" or "can be accurately and readily determined from sources whose
13  accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). The district
14  court may "take judicial notice of matters of public record without converting a motion to
15  dismiss into a motion for summary judgment." *Lee v. City of Los Angeles,* 250 F.3d 668,
16  688 (9th Cir. 2001). But the Court may not resolve disputes of fact or take notice of
17  disputed facts that exist in documents that are subject to judicial notice. *Kohja v.
18  Orexigen Therapeutics, Inc.,* at 999-1001.

19  Regarding the doctrine of incorporation by reference, a defendant may
20  legitimately seek to apply this doctrine and incorporate a document into a complaint "if
21  the plaintiff refers extensively to the document or the document forms the basis of the
22  plaintiff's claim." *United States v. Ritchie,* 342 F.3d 903, 907 (9th Cir. 2003). Even if the
23  document is not expressly referred to in a complaint, it would be proper to incorporate a

REPORT AND RECOMMENDATION - 7

1 document by reference if the claim necessarily depends on the document. *Knievel v.*
2 *ESPN,* 393 F.3d 1068, 1070-76 (9th Cir. 2005). Yet, if a document creates a defense to
3 a well-pled claim, but it did not necessarily form the basis of the of the complaint
4 because the claim did not depend on the document, then incorporation-by-reference
5 does not apply. *Kojha v. Orexigen Therapeutics, Incl,* at 1002-03.

      The documents proposed by the parties as either subject to judicial notice, or incorporated by reference, are listed here:

1. Plaintiff has proposed that the Court should consider the following: a. Project Insurance Manual (Dkt. 47-1); b. Matcon email and attachments, dated 11-2-2018 (Dkt. 47-2); Matcon email and attachments, dated 11-8-2018 (Dkt. 47-3); Matcon email and attachments, dated 1-31-2019 (Dkt. 47-4); Hubacka email and attachments, dated 8-7-2019 (Dkt. 47-5); email conversation dated 11-2-2018 through 1-25-2019 (Dkt. 48-1); Certificate of Liability Insurance dated 5-8-2018 (Dkt. 48-2); Ryland email dated 11-2-2018 and attachments (Dkt. 48-3); email conversation dated 8-7-2019 through 10-16-2019 (Dkt. 48-4); email conversation dated 8-19-2019 (Dkt. 48-5); Cordova email dated 2-8-2019 (Dkt. 48-6); Marsh letter to Westbank Holdings US Ltd., concerning list of services and the Terms and Conditions of insurance broker services, dated 12-17-2018 (Dkt. 48-7).
2. Defendant Marsh, in its motion to dismiss (Dkt. 43), and reply (Dkt. 49), proposes that the Court should consider the following: a. Project Insurance Manual (Dkt. 43-1) (same document as Dkt. 47-1); Amended Complaint in Case No. 11-2139 (Dkt. 49-1).

3. Defendant Houston Casualty, in its opposition to the motion to dismiss (Dkt. 44, 45), proposes that the Court should consider the following: a. Williams letter dated 10-7-2019 with attachments (Dkt. 45-1); Frankhauser email dated 11-9-2018 (Dkt. 45-2); email conversation dated 11-2-2018 through 1-25-2019 (Dkt. 45-3); email conversation dated 1-26-2019 through 1-29-2019 (Dkt. 45-4); email conversation dated 2-7-2019 through 2-8-2019 (Dkt. 45-5); Aragon letter re: Acknowledgement of Claim, dated 2-11-2019 (Dkt. 45-6); Davis letter re: Acknowledgement of Claim, dated 2-11-2019 (Dkt. 45-7).

a. <u>Documents that can properly be considered</u>

Documents 43-1 and 47-1 are the same document, the Project Insurance Manual. Plaintiff extensively refers to this document throughout the Second Amended Complaint and the claims alleged in the Second Amended Complaint depend in part on this document. Dkt. 30 at ¶¶ 7-9, 13-16, 18, 21, 24, 27, 32. Accordingly, this document is incorporated by reference to the Second Amended Complaint and can be properly considered when determining a 12(b)(6) motion.

Documents 47-2, 47-3, 47-4, and 47-5 are the emails and letters from the OCIP Portal that plaintiff submitted to Marsh requesting defense and indemnity from Graham's claims. The Second Amended Complaint alleges that plaintiff repeatedly sent notices to Marsh requesting defense and indemnity under the OCIP and quotes the letter and emails that it sent to Marsh. Dkt. 30 at ¶¶ 18, 21, 24, 27. Accordingly, because Documents 47-2, 47-3, 47-4 and 47-5 are referenced and quoted in the complaint, the

1  documents can be considered incorporated by reference to the Second Amended

2  Complaint and properly considered in analyzing this motion.

3   Next, Document 48-2 is a Certificate of Liability Insurance listing Marsh as the

4  "Producer" of the insurance policy and plaintiff as the insured. Document 48-7 is the

5  Engagement Letter and Terms and Conditions between Marsh and Westbank Holdings

6  US Ltd. (Westbank, also known as Project Stewart LLC, is owner). This document lays

7  out the terms and conditions of the Owner Controlled Insurance Program alleged in the

8  complaint. The Second Amended Complaint alleges that plaintiff enrolled in an Owner

9  Controlled Insurance Program administered by Marsh. Dkt. 30 at ¶¶ 7, 12. Plaintiff's

10 causes of action arise from this Owner Controlled Insurance Program purportedly

11 administered by Marsh. Accordingly, although not specifically referenced in the

12 complaint, plaintiff's claims necessarily depend in part on the content of Document 48-2

13 and Document 48-7. Therefore, Documents 48-2 and 48-7 are properly incorporated by

14 reference to the Second Amended Complaint.

15  Document 49-1 is the Amended Complaint in the case *International Paper*

16 *Company d/b/a xpedx, v. Stuit*, 2:11-cv-2139-JLR (W.D. Wash., June 5, 2012). The

17 Court may take judicial notice of this document because it is a document within a public

18 record and a court filing in another case. *See, Khoja*, 899 F.3d at 999, *Biggs v. Terhune*,

19 334 F.3d 910. 916 n.3 (9th Cir. 2003) (overruled in part on unrelated grounds by

20 *Hayward v. Marshall*, 603 F.3d 546, 555 (9th Cir. 2010)).

21   b. Documents that the Court should not consider

22  Document 45-1 is plaintiff's IFCA Notice sent to Houston Casualty with attached

23 exhibits. Although plaintiff alleges that plaintiff sent this notice to Houston Casualty, the

24

25

Second Amended Complaint does not cite to, reference, quote or rely on the content of the IFCA Notice. Dkt. 30 at ¶¶ 48, 50-51. Additionally, the Second Amended Complaint does not allege that the content of the IFCA Notice created the basis for plaintiff's claims against Marsh. Accordingly, Document 45-1 is not incorporated by reference into the Second Amended Complaint and should not be considered in resolving this motion.

Documents 45-2 45-3, 45-4, 45-5, 48-1, 48-3, 48-4, 48-5, and 48-6 all appear to be internal emails sent to Marsh employees. Plaintiff's complaint does not cite to or reference any emails sent to or from Marsh employees and does not allege that any of its claims are based on the content of these emails. Accordingly, these emails are outside of the scope of the Second Amended Complaint and are not incorporated by reference into the complaint. For this reason, these documents should not be considered in resolving this motion.

Finally, Documents 45-6 and 45-7 are letters from Houston Casualty's claim administrator, acknowledging claims submitted by Project Stewart, LLC. Plaintiff's Second Amended Complaint does not cite to, reference or rely on these documents as the basis of its claims against Marsh. Accordingly, these documents are not properly incorporated by reference to the Second Amended Complaint and should not be considered at this stage of litigation.

### B. Whether the plaintiff states a cause of action for negligence

Based on the discussion set forth below, the Court should DENY Marsh's motion to dismiss plaintiff's negligence claims against Marsh.

In order to state a cause of action for negligence under Washington law, a plaintiff must allege: (1) the existence of a duty of care to the plaintiff, (2) a breach of

1  that duty, (3) a resulting injury, and (4) the beach was the proximate cause of the injury.
2  *Wuthrich v. King County*, 185 Wn.2d 19, 25 (2016). "A duty of care is an obligation, to
3  which the law will give recognition and effect, to conform to a particular standard of
4  conduct toward another." *Centurion Props. III, LLC v. Chi. Title Ins. Co.*, 186 Wn.2d 58,
5  64 (2016) (internal quotation omitted). When determining the existence, measure and
6  scope of a duty of care, the Court must consider logic, common sense, justice, policy
7  and precedent, as applied to the facts of the case. *Centurion Props.*, 186 Wn.2d at 65.
8      Marsh's motion to dismiss argues that plaintiff's negligence claims should be
9  dismissed because they fail to allege that Marsh owed a duty to plaintiff. Dkt. 43 at 4.
10 Marsh argues that plaintiff relies on the OCIP Manual to allege that Marsh owed a duty
11 to notify Houston Casualty of plaintiff's claims. *Id.* at 5. However, Marsh argues that the
12 terms of the OCIP Manual create no such duty, and Marsh's only obligation was to keep
13 track of claims by receiving a copy of lawsuits against OCIP insureds. *Id.* at 5-6.
14     The Second Amended Complaint alleges that plaintiff enrolled in the OCIP
15 administered by Marsh. However, plaintiff does not allege that there was a contract
16 between Marsh and plaintiff or that Marsh was plaintiff's insurance broker. Accordingly,
17 plaintiff's complaint does not allege that Marsh owed plaintiff a contractual duty and
18 does not allege that Marsh owed plaintiff a duty as plaintiff's insurance agent or broker.
19 Instead, plaintiff alleges that Marsh's purported duty arose out of Marsh's role as OCIP
20 Administration/Insurance Broker. Therefore, the remaining question for the Court is
21 whether Marsh owed plaintiff a duty as a nonclient third party.
22     Under Washington law, the Court must apply the following multifactor test in
23 determining whether a professional owes a professional duty of care to a nonclient:

1. The extent to which the transaction was intended to benefit the plaintiff […];
2. The foreseeability of harm to the plaintiff;
3. The degree of certainty that the plaintiff suffered injury;
4. The closeness of the connection between the defendant's conduct and the injury;
5. The policy of preventing future harm; and
6. The extent to which the profession would be unduly burdened by a finding of liability.

*Centurion Props.*, 186 Wn.2d at 72 (applying the factors set out in *Trask v. Butler*, 123 Wn.2d 835, 843 (1994) to a title insurer); *See, Merriman v. Am. Guar. & Liab. Ins. Co.*, 198 Wn. App. 594, 622-23 (2017) (applying the *Trask* factors to an insurance adjustor and the administrator of a third-party administrator agreement); *see also*, 6 Wash. Prac., Washington Pattern Jury Instructions – Civil, WPI 107.02, 107.03, and the Notes on Use and Comments (7th ed.) (2019 update) (explaining that the *Trask* factors are normally to be determined by the trial court as a matter of law; yet in some cases, there may be questions of fact for the jury).

        The threshold question under this balancing test is whether the plaintiff is an intended beneficiary of the transaction in question. *Centurion Props.*, 186 Wn.2d at 72. If plaintiff was not the intended beneficiary of the transaction, no duty existed to the nonclient and no further inquiry is necessary. *Id*. The fact that the client and nonclient's interest align is insufficient to establish a duty of care, the transaction must have been

REPORT AND RECOMMENDATION - 13

intended to benefit the nonclient to some extent. *Stewart Title Guar. Co. v. Sterling Sav. Bank*, 178 Wn.2d 561, 567 (2013).

The Washington Court of Appeals recently analyzed the issue of professional duty to nonclients in a similar case to the one before the Court. In *Merriman v. Am. Guar. & Liab. Ins. Co.*, a storage facility owner purchased an insurance policy to cover the storage facility and client's property stored at the facility. 198 Wn. 2d at 601. The insurance company hired an adjustor to administer the insurance policy under a third-party administrator agreement between the adjustor and the insurance parent company. *Id.* at 602. After a fire destroyed the facility, the adjustor instructed its agents to encourage clients of the storage facility to file insurance claims under their own homeowners' insurance and failed to provide the clients information regarding the insurance coverage under the facility owner's policy. *Id.* at 603.

In considering the plaintiffs' negligence claims against the adjustor, the Court held that as the policy administrator, the adjustor owed the storage facility clients a duty of care. *Merriman*, 198 Wn.2d at 618-623. The Court noted that the adjustor had been contracted by the parent company to administer claims under the policy, including the plaintiffs' claims. The Court also noted that it would be impossible for the adjustor to both keep the plaintiffs in the dark regarding their coverage and at the same time fulfill their contractual duties. *Id.* at 623. Therefore, the Court held that based on the Trask factors, including the contractual obligations described in the contract as to services promised, the plaintiffs were intended beneficiaries of the insurance policy. *Id.* at 624.

Here, plaintiff alleges that it enrolled in an Owner Controlled Insurance Program designed to provide insurance benefits to parties working on the Project. Plaintiff also

REPORT AND RECOMMENDATION - 14

alleges that Marsh served as the administrator for that program in charge of managing the programs and reporting claims filed under that program. The Terms and Conditions between Marsh and Westbank Holdings (Dkt. 48-7) indicate that Marsh agreed to provide certain services to Westbank – including preparing loss notices to insurers and notifying insurers of claims. Dkt. 48-7 at 3. Plaintiff's claims alleged in the Second Amended Complaint (Dkt. 30), accepted as true and construed in the light most favorable to plaintiff, contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Plaintiff sets forth facts showing a plausible claim that parties working on the Project, who enrolled in the OCIP, were intended beneficiaries of the OCIP and insurance relationship between Marsh and Westbank.

  Next, the Court must consider whether the facts alleged in the Second Amended Complaint are sufficient to state a plausible claim as to the foreseeability of harm to the plaintiff. Plaintiff contends that Marsh owed plaintiff a duty to notify Houston Casualty of plaintiff's insurance claims. Based on this factual allegation of duty that arose from the relationship between the owner's insurance program, with Marsh as the coordinator and implementor of the program, and reasonable understanding by the insured contractors of the steps Marsh had promised to take, a plausible showing of foreseeability has been set forth -- that a failure to report plaintiff's insurance claims to Houston Casualty would harm plaintiff and cause the harm alleged in the complaint. Additionally, the Court must consider the degree of certainty that plaintiff suffered injury. Plaintiff's complaint alleges that plaintiff was not provided the insurance benefits to which plaintiff was entitled. Plaintiff's loss is based on the costs and expenses attributable to construction work

performed on the owner's jobsite but not paid for by the owner, and not covered by the insurance company. Accordingly, plaintiff has stated sufficient facts to allege the certainty of its injuries and damages.

The Court must also consider the closeness of the connection between the defendant's conduct and the injury. The Second Amended Complaint alleges that plaintiff suffered harm because Marsh's failure to notify Houston Casualty of plaintiff's claims. Accordingly, plaintiff's complaint is alleging that plaintiff suffered harm as a direct result of Marsh's inaction.

Finally, the Court must consider the policy of preventing future harm and the extent to which the profession would be unduly burdened by a finding of liability. Based on the factual allegations in the Second Amended Complaint and the documents incorporated by reference at this stage of litigation, plaintiff states a plausible claim that a finding that plaintiff sufficiently alleged a duty of care would not be contrary to policy or unduly burden Marsh's profession. The documents incorporated by reference show the terms of the OCIP, and contracts for insurance, were part of the web of insurance coverage that was intended by the owner to manage financial risk, keep the project moving forward with effective management of disputes and delays, and protect the owner and all the participants in the project from being financially devastated by events during construction.

The allegations in the Second Amended Complaint and the documents incorporated by reference, show plaintiff has sufficiently alleged a plausible claim of duty to support the negligence cause of action under Rule 12(b)(6) standards.

1    Once a plaintiff has sufficiently alleged that a professional duty to a nonclient
2  third party exists, the negligence elements remain the same as any other negligence
3  action. *In re Guardianship of Karan*, 110 Wn.App. 76, 87 (2002). Marsh's motion to
4  dismiss argues only that the Second Amended Complaint fails to allege the element of
5  duty – it does not raise challenges to other elements of negligence. Accordingly, the
6  Court need not consider the remaining elements of plaintiff's negligence claim as their
7  factual sufficiency has not been challenged.
8    Based on the foregoing, the undersigned recommends that the Court DENY
9  Marsh's motion to dismiss plaintiff's negligence claim against Marsh.

### C. Whether the plaintiff states a cause of action for tortious interference with business relationship

12    For the reasons set forth below, the Court should GRANT Marsh's motion with
13  regards to plaintiff's tortious interference with business relationship cause of action.
14    In order to state a cause of action for tortious interference with a contractual
15  relationship or business expectancy, plaintiff must allege: (1) the existence of a valid
16  contractual or business relationship; (2) that defendants had knowledge of the
17  relationship; (3) an intentional interference inducing or causing a breach or termination
18  of the relationship or expectancy; (4) that defendants interfered for an improper purpose
19  or used improper means; and (5) resultant damage. *Elcon Constr., Inc. v. E. Wash.
20  Univ.*, 174 Wn.2d 157, 168 (2012), *Leingang v. Pierce County Med. Bureau, Inc.*, 131
21  Wn.2d 133, 157 (1997).
22    The Second Amended Complaint does not state any facts alleging that Marsh
23  intentionally interfered with plaintiff contractual relationship or business expectancy.

1  Plaintiff does not state any facts alleging that Marsh interfered with plaintiff's contract or
2  business expectancy for an improper purpose or using improper means.
3      Instead, plaintiff's Second Amended Complaint relies on allegations stating: "As
4  the 'OCIP Administration/Insurance Broker,' Marsh intentionally induced or otherwise
5  caused Houston Casualty to fail to abide its obligations owed to Matcon under the
6  Houston Policy." Dkt. 30 at ¶ 61. Plaintiff's Second Amended Complaint also alleges:
7  "Given Marsh's status as the 'OCIP Administration/Insurance Broker,' Marsh's
8  interference or failure to act were for an improper purpose or improper means." Dkt. 30
9  at ¶ 62.
10     The Court is not required to accept legal conclusions couched as factual
11 allegations. *Ashcroft*, 556 U.S. at 678. Mere conclusory statements and a recitation of
12 the elements of a cause of action are insufficient to state a claim. *Twombly*, 550 U.S. at
13 545. Accordingly, because the Second Amended Complaint does not provide any facts
14 indicating how Marsh intentionally interfered with plaintiff's contract or business
15 expectancy for an improper purpose or using improper means, the complaint fails to
16 state a claim for tortious interference with business relationship.
17     Therefore, the Court should GRANT Marsh's motion with regards to plaintiff's
18 second cause of action against Marsh and dismiss plaintiff's tortious interference claim
19 without prejudice.
20                          III.    CONCLUSION
21     Based on the foregoing discussion, the undersigned recommends that the Court
22 GRANT IN PART and DENY IN PART Marsh's motion to dismiss (Dkt. 43). The Court
23 should DENY Marsh's motion with regards to plaintiff's negligence cause of action, but

should GRANT Marsh's motion and dismiss plaintiff's tortious inference claim without prejudice.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b)(2). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). If objections are filed, the parties shall have **fourteen (14) days** from the service of the objections to file a response. FRCP 72(b)(2). Accommodating this time limitation, this matter shall be set for consideration on January 1, 2021, as noted in the caption.

Dated this 14th day of December, 2020.

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 19