UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MATCONUSA LP,

                                    Plaintiff,

        v.

HOUSTON CASUALTY
COMPANY, et al.,

                                    Defendants.

CASE NO. C19-1952JLR

ORDER ON MOTIONS FOR
SUMMARY JUDGMENT

## I.    INTRODUCTION

Before the court are motions for summary judgment filed by (1) Defendant Marsh

USA Inc. ("Marsh") (Marsh MSJ (Dkt. # 92); Marsh Reply (Dkt. # 118)), (2) Defendant

Crum & Forster Specialty Insurance Company ("CFSIC") (CFSIC MSJ (Dkt. # 93);

CFSIC Reply (Dkt. # 116)), (3) Defendant Houston Casualty Company ("Houston")

(Houston MSJ (Dkt. # 99); Houston Reply (Dkt. # 121)), and (4) Plaintiff MatconUSA

LP ("Matcon") (Matcon MSJ (Dkt. # 105); Matcon Reply (Dkt. # 119)).  Matcon opposes

1    the motions for summary judgment filed against it (Marsh Resp. (Dkt. # 110); CFSIC

2    Resp. (Dkt. # 114); Houston Resp (Dkt. # 112)) and Marsh opposes the motion for

3    summary judgment filed by Matcon (Matcon Resp. (Dkt. # 109)).  The court has

4    considered the motions, all materials submitted in support of and in opposition to the

5    motions, and the governing law.  Being fully advised,[1] the court DENIES Marsh's

6    motion; GRANTS in part and DENIES in part Matcon's motion; GRANTS in part and

7    DENIES in part CFSIC's motion; and DENIES Houston's motion.

8                                    **II.      BACKGROUND**

9          The court sets forth below the factual and procedural background that is common

10   to all four motions.  The court discusses the additional background relevant to each of the

11   motions in its analysis of those motions.

12   **A.      Factual Background**

13         **1.      The Project and the OCIP**

14         In 2018, Graham Construction & Management, Inc. ("Graham") hired Matcon as a

15   subcontractor to perform certain excavation and installation work at a construction

16   project located at 1200 Stewart Street in Seattle, Washington ("the Project").  (Bourgeois

17   Decl. (Dkt. # 47) ¶ 3; 5/16/22 Cordova Decl. (Dkt. # 95) ¶ 2.)  The Project is owned by

18   Project Stewart LLC ("Project Stewart"), whose parent company is Westbank Holdings

19   US Ltd. ("Westbank").  (*See* 10/19/20 Williams Decl. (Dkt. # 48) ¶ 9, Ex. G, at 1

20

21   ───────────────
     [1] Marsh, CFSIC, and Houston request oral argument on their motions (*see* Marsh MSJ at
     1; CFISC MSJ at 1; Houston MSJ at 1).  The court, however, concludes that oral argument

22   would not be helpful to its disposition of the motions, *see* Local Rules W.D. Wash. LCR 7(b)(4).

1    ("Engagement Letter").)  Separately, Matcon contracted directly with Project Stewart to

2    perform shoring design and engineering drawings for the Project.  (*See, e.g.*, CFSIC

3    Resp. at 3.)

4         Project Stewart engaged Marsh as its insurance broker to administer an Owner

5    Controlled Insurance Program ("OCIP") that would provide general liability and excess

6    liability coverage for the contractors working on the Project.  (Engagement Letter;

7    5/16/22 Cordova Decl. ¶ 2, Ex. A-9 ("OCIP Manual") at 3-4[2]; *see also id.* at 5 (defining

8    "OCIP" as "A coordinated master insurance program under which Commercial General

9    Liability and Excess Liability are procured or provided on a project basis for Enrolled

10   Parties for losses arising out of covered operations and completed operations at the OCIP

11   Project Site").)  Marsh prepared a Project Insurance Manual for the OCIP ("OCIP

12   Manual") to "describe[] the insurance coverages and operation of the" Project.  (*Id.* at 3.)

13   The OCIP Manual designated Marsh as "OCIP Administration/Insurance Broker," Marsh

14   employee Natalie Cordova as "OCIP Program Manager," Marsh employee Rhanz Cuison

15   as "OCIP Advisor," Project Stewart as "Owner," and Graham as "General Contractor."

16   (OCIP Manual at 4.)  Project Stewart hired Thomas E. Johnson, an insurance adjuster

17   employed by Sedgwick, to act as its Claims Executive for the OCIP.  (*Id.*; *see also*

18   5/16/22 Cordova Decl. ¶ 4.)  According to Ms. Cordova, the Claims Executive's

19   responsibilities included "investigating incidents for the OCIP and determining the

20   estimated cost and appropriate repairs for property damage suffered by third parties

21

22   ───────────────────
     [2] The court cites to the page numbers in the ECF header when citing to pages of the OCIP
     Manual.

1   during work performed by enrolled contractors." (*Id.*)  In September 2018, Mr. Johnson

2   was replaced by another Sedgwick adjuster, Scott Fankhauser.  (*Id.*; *see* 5/16/22 Philip

3   Decl. (Dkt. # 101) ¶ 4, Ex. 3.)

4          Houston provided the primary general liability coverage for the OCIP.  (OCIP

5   Manual at 9-10.)  The policy included a $25,000 deductible chargeback for every

6   occurrence or loss.  (5/16/22 Cordova Decl. ¶ 7; *see* OCIP Manual at 11 (explaining the

7   deductible chargeback).)  On May 8, 2018, Marsh issued a Certificate of Liability

8   Insurance to Matcon, confirming that Matcon was covered by the Houston policy.

9   (10/29/20 Williams Decl. ¶ 4, Ex. B.)  The certificate identified Marsh as the "producer"

10  and Matcon as the "insured."  (*Id.*)

11         The OCIP Insurance Manual provides instructions for "claim reporting."  (OCIP

12  Manual at 15.)  Specifically, it states:

13         **Forward all lawsuits/summons pertaining to the Project to the Owner.**

14         If injuries to the public or damage to property occur **within** the construction
           perimeter and are related to the construction work, a General Liability Claim
15         Reporting form must be completed within 24 hours and reported to the
           Owner and General Contractor with a copy to Marsh.  The Insurance
16         Company will be responsible for all claim investigation and handling.

17         Claims should be reported to the following:

18         1. Justin Ripkin, General Contractor's Project Manager . . .
           2. Natalie Cordova, OCIP Project Manager . . .
19         3. Thomas E. Johnson, Westbank

20         General Liability Incidents **outside** of the construction perimeter should be
           reported to your non-OCIP insurer.
21
           **Forward all lawsuits/summons pertaining to the Project to the Risk**
22         **Management Department.**

ORDER - 4

(OCIP Manual at 15 (emphasis in original).)

Marsh made available an "OCIP Mwrap Contractor Portal" (the "OCIP Portal")

for use by companies enrolled in the OCIP.  (*See* OCIP Manual at 16; *see also id.* at 17-

31 (OCIP Portal instructions).)  According to the OCIP Manual, the OCIP Portal "allows

[companies] to enroll in the OCIP, notify Marsh of subcontractor awards, and run various

reports."  (*Id.* at 16.)  The OCIP Portal's login screen states that users can "provide and

manage" certain information from the portal, including "Claims Reporting Instructions."

(*Id.* at 21.)

### 2. Graham's Allegations Against Matcon and Matcon's OCIP Portal Submissions

On September 24, 2018, Matcon's workers allegedly damaged a duct bank that

contained utility lines owned by Seattle City Light.  (*See* Bourgeois Decl. ¶ 5, Ex. B, at 4[3]

("10/25/18 Notice of Delay").)  Matcon did not report the damage to the OCIP; instead, it

repaired the damage itself.  (5/16/22 Cordova Decl. ¶ 10; Clifford Decl. (Dkt. # 98) ¶ 7,

Ex. 7 ("Heath Matcon 30(b)(6) Dep.") at 59:9-60:8.)  Matcon again allegedly damaged

the duct banks on October 19 and 20, 2018.  (*See* 10/25/18 Notice of Delay.)  Again,

Matcon did not report the damage to the OCIP.  (5/16/22 Cordova Decl. ¶ 11.)

On October 23, 2018, Graham notified Project Stewart's Claims Executive, Mr.

Fankhauser, Westbank employee Emma Horri, and Marsh Vice President Valerie Merry

about the September 24, October 19, and October 20, 2018 duct bank strikes ("the duct

---

[3] The court cites to the page numbers in the ECF header when citing to pages of Exhibit B to the Bourgeois Declaration.

bank claim").  (5/16/22 Cordova Decl. ¶ 11, Ex. A-12 (email chain between Graham's

project manager Kevin Coddington, Ms. Horri, Ms. Merry, and Mr. Fankhauser,

attaching incident reports).)  Ms. Horri asked Mr. Fankhauser to investigate the incidents.

(*Id.*)  Mr. Fankhauser agreed to follow up with Graham and let Ms. Horri know what he

found out.  (*Id.*)

On October 25, 2018, Graham, through Mr. Ripkin, sent Matcon's project

manager, Sylvia Bourgeois, a "formal Notice of Delay" under the terms of Matcon's

subcontract.  (10/25/18 Notice of Delay.)  It informed Matcon that, as a result of the duct

bank strikes, operations on the Project had been shut down "for design and safety

concerns" and that "Graham and other subcontractors have incurred and are incurring

costs as a result of [Matcon's] delays."  (*Id.*)  Graham warned Matcon that it was

"responsible for all consequential costs and schedule impacts as a result of these delays."

(*Id.*)  Matcon responded on October 26, 2018, and disputed that it was responsible for the

damages.  (5/16/22 Cordova Decl. ¶ 14, Ex. A-14.)  Graham sent a second Notice of

Delay to Matcon on October 30, 2018, in which it again asserted that Matcon was

responsible for the duct bank damages.  (*Id.* ¶ 15, Ex. A-15.)

On November 2, 2018, Matcon submitted information about Graham's October 25

Notice of Delay through the OCIP Portal and Ms. Bourgeois forwarded the submittal to

Mr. Ripkin, Ms. Cordova, and Mr. Johnson by email.  (Bourgeois Decl. ¶ 5, Ex. B

("November 2 OCIP Submission").)  In its submission, Matcon stated that Graham had

alleged that Matcon was "legally liable for property damage—including physical damage

to on-site and off-site electrical utilities—and for other loss of use damages associated

with" the Project.  (November 2 OCIP Submission at 3.)  It stated that it sought "defense

and indemnity under all available OCIP coverages" and asked the OCIP "to resolve these

claims expeditiously."  (*Id.*)  Matcon attached Graham's October 25, 2018 Notice of

Delay to its submittal.  (*Id.* at 4.)  Matcon did not receive a response to Ms. Bourgeois's

email or to its OCIP Portal submission, and Marsh did not forward the submission to

Houston.  (*See* Bourgeois Decl. ¶ 9; Day Decl. (Dkt. # 100) ¶ 5.)  Marsh did, however,

forward Matcon's submission to Mr. Fankhauser on November 8, 2018.  (*See* 6/6/22

Williams Decl. (Dkt. # 111) ¶ 4, Ex. B, at 2.)

On November 6, 2018, Graham sent a second letter to Matcon to "follow up on the

duct bank strikes that occurred on" October 19 and 20, 2018.  (Bourgeois Decl. ¶ 6, Ex.

C, at 4.[4])  It asked Matcon to provide a "plan and timeline illustrating Matcon's proposal

to repair the damaged utility" by November 12, 2018.  (*Id.*)

On November 7, 2018, Graham sent a Notice of Default to Matcon, stating that

Matcon was in default of its subcontract obligations and that Graham and other

subcontractors were "continu[ing] to incur costs and suffer damages as a result of

Matcon's schedule delays."  (Bourgeois Decl. ¶ 6, Ex. C, at 6 ("Notice of Default").)  It

demanded a "detailed rectification and recovery plan and schedule outlining how Matcon

plans to get the work on track" by no later than November 9, 2018.  (*Id.*)  It further stated

that "all payments [to Matcon] are on hold until Graham is satisfied that the matter of

Matcon's defaults is adequately resolved" and that if Matcon "fail[ed] to provide a

---

[4] The court cites to the page numbers in the ECF header when citing to pages of Exhibit
C to the Bourgeois Declaration.

suitable recovery plan," Graham would "pursue all remedies available to it at law, including the termination of Matcon's right to continue the work" under the subcontract and "take whatever actions necessary to complete the work and recover all losses, damages, costs, and additional expenses incurred due to Matcon's default and termination." (*Id.*)

On November 8, 2018, Matcon submitted information about Graham's Notice of Default to the OCIP Portal, and Ms. Bourgeois again forwarded the submission to Mr. Ripkin, Ms. Cordova, and Mr. Johnson by email. (Bourgeois Decl. ¶ 6, Ex. C ("November 8 OCIP Submission").) In that submission, Matcon attached the November 6 and November 7, 2018 letters from Graham, stated that Graham's actions presented "an emergent issue," requested that OCIP "resolve the claims being asserted against [Matcon] immediately," requested defense and indemnity "under all available OCIP coverages," and asked the OCIP to "resolve these claims expeditiously." (November 8 OCIP Submission at 3.) Marsh again did not respond to Ms. Bourgeois's email or to Matcon's OCIP Portal submission, nor did it forward the submission to Houston. (*See* Bourgeois Decl. ¶ 9; Day Decl. ¶ 5.)

On November 9, 2018, Mr. Fankhauser sent Ms. Merry an email to follow up after a conversation about the "drilling claims at 1200 Stewart." (6/6/22 Williams Decl. ¶ 7, Ex. D.) In that email, Mr. Fankhauser wrote that "a claim has been made under the OCIP by one of the subcontractors" and that he would "need more information to properly evaluate and adjust this claim." (*Id.*) He concluded that "[b]ased on the correspondence from Graham to Matcon, there may be time delay damage considerations in addition to

1 | the physical damage to the Seattle City Light property" and advised that Marsh "may

2 | want to put the insurer on notice of this claim." (*Id.*)  Marsh did not, however, forward

3 | the claim to Houston.  (*See* Day Decl. ¶ 5.)

4 | On November 23, 2018, Graham terminated its subcontract with Matcon for

5 | failure to correct the defaults or to provide "an acceptable rectification plan."  (5/16/22

6 | Cordova Decl. ¶ 26, Ex. A-22 ("Termination Notice").)

7 | On January 25, 2019, Graham informed counsel for Matcon that it had discovered

8 | "a large volume of concrete" in a sewer line ("the cement claim").  (Bourgeois Decl. ¶ 7,

9 | Ex. D, at 8.)  It stated that although it was still investigating the issue, it had "reason to

10 | believe the issue may have been caused by Matcon having hit a side sewer with its

11 | drilling rig during its piling installations" and if the damage was indeed caused by

12 | Matcon, Graham would "require Matcon to indemnify it for any and all costs incurred to

13 | rectify the issue."  (*Id.*)  Finally, Graham stated that it had informed the OCIP

14 | administrator of the issue and "require[d] Matcon [to] advise its insurers."  (*Id.*)

15 | On January 31, 2019, Matcon submitted information to the OCIP Portal regarding

16 | Graham's January 25, 2019 letter, and Ms. Bourgeois again forwarded the submission to

17 | Mr. Ripkin, Ms. Cordova, and Mr. Johnson by email.  (Bourgeois Decl. ¶ 7, Ex. D

18 | ("January 31 OCIP Submission").)  Matcon stated that it had not received any response to

19 | its November 2 and November 8 OCIP Submissions; alleged that it had incurred damages

20 | including "withheld payments totaling $3,703,668.03 and termination of its subcontract

21 | by Graham;" and again requested defense and indemnity and an expeditious resolution of

22 |

1    its claims.  (*Id.*)  Marsh again did not respond to Matcon's email or to its OCIP Portal

2    submission, nor did it forward the submission to Houston.  (*Id.* ¶ 9; Day Decl. ¶ 5).)

3        On February 7, 2019, Marsh's employee Valerie Merry emailed a representative

4    of Project Stewart's owner, Westbank, to inquire whether the duct bank and cement

5    incidents should be reported to the insurance carrier.  (5/16/22 Cordova Decl. ¶ 33, Ex.

6    A-25.)  She noted that she was "looking for confirmation" on whether the owner wanted

7    to put the insurance carrier on notice because she was "really not sure if either one of

8    them will reach or exceed the deductible [chargeback] of $25K."  (*Id.*)  Project Stewart

9    confirmed that Marsh should "put the carrier on notice." (*Id.*)  Marsh reported both

10   incidents to Houston and the second-layer liability carrier the next day.  (*Id.* ¶ 34, Exs.

11   26-27.)  It did not, however, inform Matcon that Project Stewart's and Graham's duct

12   bank and cement claims had been submitted to Houston, nor did it report Matcon's

13   claims to Houston.  (*See* Bourgeois Decl. ¶ 9 (stating Matcon received no responses to

14   any of its OCIP Portal submissions); Day Decl. ¶ 5.)  Through its claims adjuster,

15   Houston confirmed receipt of the claims from Project Stewart and Graham regarding the

16   duct bank and cement damage on February 11, 2019.  (Day Decl. ¶¶ 7-13, Exs. A-E.)

17       On February 28, 2019, Matcon filed a lawsuit against Graham in King County

18   Superior Court, *MatconUSA LP v. Graham Construction & Management Inc.*,

19   No. 19-2-05800-5 (King Cty. Super.) ("the Underlying Lawsuit"), seeking payment for

20   its work on the Project.  (*See* 5/16/22 Philip Decl. ¶ 13, Ex. 12.)  On July 19, 2019,

21   Graham filed counterclaims against Matcon, along with a third-party claim against

22   Project Stewart.  (*See* Bourgeois Decl. ¶ 8, Ex. E, at 11-17 ("Graham Counterclaims").)

On August 7, 2019, Matcon submitted Graham's counterclaims to the OCIP Portal, and counsel for Matcon emailed the submission to Mr. Ripkin, Ms. Cordova, and Mr. Johnson.  (Bourgeois Decl. ¶ 8, Ex. E ("August 7 OCIP Submission").)  Matcon again informed Marsh that it had received no response to its prior submissions and incurred extensive damages as a result, and it requested "defense and indemnity under all available OCIP coverages" and an expeditious resolution.  (*Id.* at 3.)  Matcon again did not receive any response to its email or to its OCIP Portal submission, nor did Marsh forward the submission to Houston.  (*Id.* ¶ 9; Day Decl. ¶ 5.)

**3.      Matcon's Tender to CFSIC**

On August 7, 2019, Matcon tendered Graham's counterclaims in the Underlying Lawsuit to CFSIC, its professional liability insurer.  (Reiss Decl. (Dkt. # 96) ¶ 4, Ex. B.)  On September 12, 2019, CFSIC agreed to defend Matcon in the Underlying Lawsuit subject to a reservation of rights.  (*Id.* ¶ 5, Ex. C ("Sept. 12 Letter").)  Although CFSIC assigned an attorney to Matcon's matter, Matcon continued to use its own attorneys to represent it in the Underlying Lawsuit.  (*See id.* ¶ 6, Ex. D.)

**B.      Procedural Background**

Matcon filed this action for insurance benefits, including defense and indemnity coverage, against Houston in November 2019.  (*See* Compl. (Dkt. # 1).)  It amended its complaint in February 2020 (*see* Am. Compl. (Dkt. # 19)), then amended it again in July 2020 to add Marsh and CFSIC as defendants (2d Am. Compl. (Dkt. # 30)).  It alleges claims against Houston for declaratory relief, breach of contract, insurer bad faith, and violations of the Insurance Fair Conduct Act, RCW 48.30.015 ("IFCA"), and the

1   Washington Consumer Protection Act, ch. 19.86 RCW ("WCPA"). (2d Am. Compl.

2   ¶¶ 33-54.) It alleges a claim against Marsh for negligence arising from its failure to

3   notify the OCIP insurers of its requests for insurance benefits. (*Id.* ¶¶ 55-56.[5]) Finally, it

4   seeks a declaration regarding CFSIC's obligations under the CFSIC Policy. (*Id.*

5   ¶¶ 64-67.)

6       On September 16, 2021, Matcon and Marsh jointly moved the court for a six-

7   month continuance of the trial date and all pretrial deadlines. (9/16/21 Mot. (Dkt. # 83).)

8   They argued that they had good cause for an extension because the Underlying Lawsuit

9   had not yet resolved and, as a result, "Matcon's claim for indemnity coverage [was] not

10  yet ripe for trial." (*Id.* at 3.) Matcon represented that it had "reached an agreement in

11  principle" in the Underlying Lawsuit in March 2020 "that would resolve all claims made

12  by and against Matcon," but that no final agreement had been signed because Project

13  Stewart and Graham had not resolved the claims between them. (*Id.* at 3 (citing 9/6/21

14  Sleight Decl. (Dkt. # 84) ¶¶ 4-7).) Matcon expected, however, that the Underlying

15  Lawsuit would be "finally resolved in the near future." (*Id.* (citing Sleight Decl. ¶ 8).)

16  The court denied the joint motion. (9/16/21 Order (Dkt. # 86).)

17      On September 23, 2021, the court held a telephonic conference with the parties to

18  discuss the case schedule. (9/23/21 Min. Entry (Dkt. # 88); 9/23/21 Min. Order (Dkt.

19  # 89).) After hearing argument, the court vacated the November 8, 2021 trial date; reset

20

21  _____

      [5] The court dismissed Matcon's tortious interference with economic relations claim
22  against Marsh on March 22, 2021. (3/22/21 Order (Dkt. # 70) at 3-4 (citing R&R (Dkt. # 59) at
    17-18).)

trial on August 29, 2022; and granted in part Marsh's request to reopen discovery.
(9/23/21 Min. Order.)  The court granted Marsh leave to take the depositions of three
witnesses; granted the parties leave to "examine the disclosed expert witnesses on issues
of damages after the underlying state-court lawsuit is resolved"; and set a May 2, 2022,
deadline for completing this additional discovery.  (*Id.*)  As of the date of this order, no
party has notified the court that the Underlying Lawsuit has been resolved.  (*See
generally* Dkt.)

## III.   ANALYSIS

The court begins by setting forth the standards for evaluating motions for
summary judgment.  It then proceeds to consider (1) the cross-motions for summary
judgment filed by Marsh and Matcon, (2) the motion for summary judgment filed by
CFSIC, and (3) the motion for summary judgment filed by Houston.

**A.     Summary Judgment Standard**

Under Rule 56 of the Federal Rules of Civil Procedure, either "party may move
for summary judgment, identifying each claim or defense—or the part of each claim or
defense—on which summary judgment is sought."  Fed. R. Civ. P. 56.  Summary
judgment is appropriate if the evidence, when viewed in the light most favorable to the
non-moving party, demonstrates "that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law."  *Id.*; *see Celotex Corp. v.
Catrett*, 477 U.S. 317, 322 (1986).  A dispute is "genuine" if "the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the

1    outcome of the suit under the governing law." *Id.*

2        The moving party bears the initial burden of showing that there is no genuine

3    dispute of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477

4    U.S. at 323. If the moving party does not bear the ultimate burden of persuasion at trial,

5    it nevertheless "has both the initial burden of production and the ultimate burden of

6    persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz*

7    *Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of

8    production, the moving party must either produce evidence negating an essential element

9    of the nonmoving party's claim or defense or show that the nonmoving party does not

10   have enough evidence of an essential element to carry its ultimate burden of persuasion at

11   trial." *Id.* If the moving party meets its burden of production, the burden then shifts to

12   the nonmoving party to identify specific facts from which a factfinder could reasonably

13   find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at

14   250.

15       The court is "required to view the facts and draw reasonable inferences in the light

16   most favorable to the [nonmoving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

17   The court may not weigh evidence or make credibility determinations in analyzing a

18   motion for summary judgment because these are "jury functions, not those of a judge."

19   *Anderson*, 477 U.S. at 249-50. Nevertheless, the nonmoving party "must do more than

20   simply show that there is some metaphysical doubt as to the material facts . . . . Where

21   the record taken as a whole could not lead a rational trier of fact to find for the

22   nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal

1   quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

2   475 U.S. 574, 586-87 (1986)).

3          Where cross-motions are at issue, the court must "evaluate each motion separately,

4   giving the nonmoving party in each instance the benefit of all reasonable inferences."

5   *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (citations

6   omitted).

7   **B.     Marsh and Matcon's Cross-Motions for Summary Judgment**

8          Marsh moves for summary judgment on Matcon's negligence claim.  (*See*

9   *generally* Marsh MSJ.)  It argues that (1) it did not owe a duty of care to Matcon to

10  immediately forward Matcon's OCIP submissions to Houston and (2) Matcon has no

11  evidence of any damages because it has not yet settled the Underlying Lawsuit.  (*Id.*)

12  Matcon counter-moves for partial summary judgment against Marsh.  (*See generally*

13  Matcon MSJ.)  It seeks an order that Marsh owed it multiple duties of care and that

14  Marsh breached those duties as a matter of law.  (*Id.*)  It also moves to strike certain

15  statements in Ms. Cordova's May 16, 2022 declaration.  (Marsh Resp. at 4-6; *see id.*,

16  App'x A (attaching copy of Ms. Cordova's declaration identifying the challenged

17  statements); *see also* Matcon Reply at 1-2.)  The court first considers Matcon's motion to

18  strike, then provides additional factual background specific to the dispute between

19  Matcon and Marsh before considering the parties' cross-motions for summary judgment.

20         1.     Motion to Strike

21          A declaration "used to support or oppose a motion must be made on personal

22  knowledge, set out facts that would be admissible in evidence, and show that

1   the . . . declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).

2   Matcon argues that Ms. Cordova's declaration does not meet this standard because it

3   (1) offers "a number of conclusory expert opinions regarding the OCIP's operation and

4   the reasonableness of the parties' conduct" (Marsh Resp. at 5 (citing 5/16/22 Cordova

5   Decl. ¶¶ 22, 32)) and (2) "repeatedly asserts [Ms. Cordova's] personal interpretation of

6   the OCIP Manual and Marsh's Engagement Letter with the Project's owner" (*id.* at 5-6

7   (citing 5/16/22 Cordova Decl. ¶¶ 4, 10, 11, 14, 16, 19, 21, 25, 26, 27, 28, 31, 32)).[6]

8            Ms. Cordova is a Vice President of Marsh in the Construction Risk practice area,

9   was involved in drafting the OCIP Manual, and served as the project manager and

10   Marsh's contact person for the OCIP.  (5/16/22 Cordova Decl. ¶¶ 1-2, 5; OCIP Manual at

11   4.)  Thus, as Marsh points out, Ms. Cordova's testimony about the process Marsh

12   followed in administering the OCIP, including the responsibilities assumed by Marsh and

13   Project Stewart's Claims Executive, is based on her personal experience.  (*See* Marsh

14   Reply at 13-14.)  In addition, the court agrees with Marsh that Ms. Cordova may testify,

15   based on her personal experience, about her understanding of the meaning of terms used

16   in the OCIP Manual and the Engagement Letter between Marsh and Westbank.  (*See,*

17   *e.g.*, 5/16/22 Cordova Decl. ¶ 25.)  Therefore, the court DENIES Matcon's motion to

18   strike paragraphs 4, 10, 11, 14, 16, 19, 21, 22, 24, 25, 26, 27, 28, 31, and 32 to the extent

19   they include testimony about the processes Marsh followed in administering the OCIP.

20

21            [6] Matcon also notes that Marsh never made its initial disclosures under Federal Rule of
    Civil Procedure 26(a)(1) and "has not otherwise identified any witnesses in this matter,"
22   including Ms. Cordova.  (6/6/22 Williams Decl. ¶ 6.)

The court agrees with Matcon, however, on one point. Because she has not been disclosed as an expert witness, Ms. Cordova cannot offer expert opinions regarding the reasonableness of Marsh's or Matcon's conduct under the circumstances. Accordingly, the court GRANTS Matcon's motion to strike the following statements:

- "A reasonable OCIP Administrator in Marsh's position does not simply forward every notice of an incident to the insurers involved with an OCIP." (5/16/22 Cordova Decl. ¶ 22.)

- "From my experience in administering OCIPs, Matcon acted unreasonably in not following up with any OCIP representative for many weeks if Matcon truly believed that an insurer somehow should have assigned defense counsel for Matcon during that time." (*Id.* ¶ 32.)

2.    Additional Factual Background

According to the Engagement Letter between Marsh and Westbank, Marsh agreed to "act as [Westbank's] insurance broker and/or risk management consultant" with respect to certain lines of insurance for Project Stewart. (Engagement Letter at 2.) It further agreed, in relevant part, to provide Westbank the following "claims-related services":

> Excluding Workers Compensation, Primary Auto Liability / Physical Damage and non-complex Primary General Liability claims, prepare loss notices to insurers and notify insurers of claims; provided that your Marsh claims advocate is informed in writing by you of the claim, and Marsh has placed the applicable policies or the Marsh claims advocate has been provided written notice by you of the applicable carrier and policies.

(*Id.* at 2.) The Engagement Letter defines "you" as meaning Westbank. (*Id.* at 1.)

On March 29, 2018, Ms. Cordova led an OCIP "kick-off" meeting in which "it was explained" that Sedgwick, as the Claims Executive for the OCIP, would be responsible for "investigating, handling, and, if necessary, responding to notices" that

1    subcontractors submitted in accordance with the Claims Reporting Instructions in the

2    OCIP Manual.  (5/16/22 Cordova Decl. ¶ 6.)  Matcon's representative, Adam Heath, was

3    invited to the kick-off meeting.  (*See id.*)  The parties have directed the court to no

4    evidence in the record, however, regarding whether Mr. Heath attended that meeting or

5    whether the role of the Claims Executive was otherwise explained to the OCIP enrollees.

6           According to Ms. Cordova, "Marsh's responsibility to report property damage like

7    the duct-bank incidents to [Houston]" arose only if "(1) it was determined [by the Claims

8    Executive] that the repair costs would likely be greater than the $25,000 deductible

9    [chargeback] and (2) Project Stewart, as the Owner and as Marsh's sole client for this

10   project, specifically directed Marsh to report the incident(s) to the insurer."  (5/16/22

11   Cordova Decl. ¶ 24.[7])  Ms. Cordova further states that Marsh "relied on Mr. Fankhauser

12   at Sedgwick to advise [it] about the estimated repair costs for the duct-bank damages,

13   whether those costs exceeded the $25,000 deductible, and when the Owner, Project

14   Stewart, wanted a claim reported to the OCIP insurers."  (5/16/22 Cordova Decl. ¶ 24;

15   *see also id.* ¶ 23 (stating Mr. Fankhauser was "taking the lead role in investigating and

16   handling these incidents.").)  Similarly, Project Stewart's "authorized representative,"

17   Michael Chaplin, states that when Project Stewart first learned of Matcon's November 2

18   and November 8 OCIP Submissions, it did not instruct Marsh or any other party to report

19   the submissions as a "claim" to Houston.  (Chaplin Decl. ¶ 6.)  Mr. Chaplin further states

20   that he "typically would not expect an OCIP claim to be tendered to the insurance

21

22        [7] Neither of these preconditions, however, are included in the OCIP Manual.  (*See generally* OCIP Manual.)

carrier(s) when the anticipated costs of correcting the issue are less than the $25,000 OCIP deductible." (*Id.*)

Thus, Marsh did not inform Matcon that the duct bank incidents had already been reported to the OCIP by Graham; that Mr. Fankhauser was investigating the claims; that it had forwarded Matcon's November 2 OCIP Submission to Mr. Fankhauser; or that Marsh was waiting for both the results of Mr. Fankhauser's investigation and the approval of Project Stewart to notify Houston about the incidents. (*See generally* 5/16/22 Cordova Decl.)  Matcon also did not follow up with Marsh regarding the status of those submissions. (*See id.* ¶¶ 28, 32.)

On January 24, 2019, Marsh Vice President Valerie Merry forwarded Matcon's November 2 OCIP Submission to Mr. Cuison by email with a copy to Ms. Cordova. (6/6/22 Williams Decl. ¶ 4, Ex. B, at 2.)  She wrote that she had "discussed with [Mr. Fankhauser] @ Sedgwick" and that "it would seem to me that this incident has not been reported and should be as [Mr. Fankhauser] spoke with Graham . . . and he advised that they will be looking to obtain a permit to open up a pot hole so that they can investigate damage to the vault.  Do you report this claim or should I?" (*Id.*)  Mr. Cuison replied, "Wait who has a contract with Sedgwick?  GL claims are reviewed by Marsh and we then report it to the insurer ([Houston]) as needed." (*Id.* at 1-2.)  Ms. Merry and Mr. Cuison continued to discuss who had responsibility for reviewing and reporting the claim to Houston, until Mr. Cuison suggested "getting on a call" to talk through the process. (*Id.*

at 1.[8])  On February 7, 2019, Ms. Merry emailed Westbank to inquire whether the duct

bank and cement incidents should be reported to the insurance carrier.  (5/16/22 Cordova

Decl. ¶ 33, Ex. A-25.)  After receiving confirmation from Westbank, Ms. Merry reported

the incidents to Houston on behalf of Graham and Project Stewart on February 8, 2019.

(*Id.* ¶ 34, Exs. 26-27; *see also* Day Decl. Exs. A-E.)  She did not, however, report

Matcon's OCIP submissions relating to the duct bank and cement incidents to Houston.

(*See* Day Decl. ¶ 5.)

    3.    Negligence

        The elements of a negligence claim under Washington law are (1) the existence of

a duty; (2) breach of that duty; (3) resulting injury; and (4) that the breach was a

proximate cause of that injury.  *Ranger Ins. Co. v. Pierce Cnty.*, 192 P.3d 886, 889

(Wash. 2008).  Matcon argues that it is entitled to an order on summary judgment that

Marsh owed it a duty to report its OCIP Portal submissions to Houston; that Marsh

breached that duty; and that it suffered "some" damages as a result.  (*See generally*

Matcon MSJ.)  Marsh also moves for summary judgment, contending that it had no duty

to forward Matcon's OCIP Portal submissions to Houston and even if it did, Matcon has

no evidence of damages.  (*See generally* Marsh MSJ.)  Below, the court considers

whether Marsh owed a tort duty to Matcon, whether Marsh breached that duty, and

whether Matcon can demonstrate resulting damages.

        a.    *Duty*

---

[8] The results of that call are not in the record.

1       The parties cross-move for summary judgment on the questions of whether Marsh

2  owed Matcon a duty of care and, if so, the scope of that duty.  Matcon argues that Marsh,

3  as an insurance broker, owed it broad duties "of reasonable skill and ordinary care and

4  diligence," and the "responsibility to act in good faith and to carry out instructions."  (*See*

5  Matcon MSJ at 7-8.)  Marsh argues that it had no duty to notify Houston about Matcon's

6  OCIP Portal submissions until (1) it was clear that the repair costs for the duct-bank

7  damages would exceed the OCIP's $25,000 deductible and (2) Project Stewart asked

8  Marsh to report the incidents to the OCIP insurers.  (Marsh MSJ at 3.)

9       "A duty of care is 'an obligation, to which the law will give recognition and effect,

10  to conform to a particular standard of conduct toward another.'"  *Centurion Props. III,*

11  *LLC v. Chi. Title Ins. Co.*, 375 P.3d 651, 654 (Wash. 2016) (quoting *Affil. FM Ins. Co. v.*

12  *LTK Consulting Servs., Inc.*, 243 P.3d 521, 525 (Wash. 2010)).  "In a negligence action,

13  in determining whether a duty is owed to the plaintiff, the court considers 'logic, common

14  sense, justice, policy, and precedent, as applied to the facts of the case.'"  *Merriman v.*

15  *Am. Guarantee & Liab. Ins. Co.*, 396 P.3d 351, 363 (Wash. Ct. App. 2017) (quoting

16  *Centurion Props.*, 375 P.3d at 654).  "The existence of a duty and the scope of that duty

17  are questions of law."  *Centurion Props.*, 375 P.3d at 654.  Thus, the "'court must not

18  only decide who owes the duty, but also to whom the duty is owed, and what is the nature

19  of the duty owed.'"  *Id.* (quoting *Keller v. City of Spokane*, 44 P.3d 845, 848 (Wash.

20  2002)).

21       Neither party has cited, nor has the court found, any Washington cases considering

22  whether an OCIP Administrator/Broker has a tort duty to subcontractors enrolled in the

OCIP.  As Matcon points out, however, insurance brokers owe their clients "a duty of reasonable skill and ordinary care and diligence."  (Matcon MSJ at 7-8 (citing *Welpman v. State Farm Fire & Cas. Co.*, No. C11-5371RJB, 2012 WL 1204951, at *5 (W.D. Wash. Apr. 11, 2012) (noting that "[a]n insurance agent owes a common law duty to exercise reasonable skill, care and diligence in effecting insurance")).)   In addition, insurance brokers have a duty to "act in good faith and to carry out instructions."  (*Id.* (citing *Welpman*, 2012 WL 1204951, at *5 (citing *AAS–DMP Mgmt., L.P. Liquidating Tr. v. Acordia Nw., Inc.*, 63 P.3d 860, 863 (Wash. Ct. App. 2003)).)

Marsh argues that the duty to "carry out instructions" encompasses only Marsh's duty to carry out Project Stewart's instructions.  (Matcon Resp. at 15-19 (citing Chaplain Decl. ¶¶ 6-7; Cordova Decl. ¶¶ 22-24, 33-34).)  It points to the language of the Engagement Letter, which states that Marsh agrees to "prepare loss notices to insurers and notify insurers of claims; *provided that [Westbank's] Marsh claims advocate is informed in writing by [Westbank] of the claim . . . .*"  (Engagement Letter at 2 (emphasis added).)  The court agrees with Marsh that this language provides that approval by Westbank, through Project Stewart, is a prerequisite that must be satisfied before Marsh is required to notify an insurer of an OCIP claim.  Thus, the court concludes that Marsh, as the OCIP insurance broker and administrator, has the duty to exercise reasonable skill, care, diligence, and good faith in carrying out the instructions of Westbank and Project Stewart.

The court now must consider whether Marsh owed these duties only to its clients, Project Stewart and Westbank, or whether Marsh also owed these duties to Matcon as a

1   third-party enrollee in the OCIP.  As the court noted in its order denying Marsh's motion

2   to dismiss, Washington courts review the factors originally set forth in *Trask v. Butler*,

3   872 P.2d 1080, 1083 (Wash. 1994), to determine whether a professional owes a duty to a

4   nonclient third party.  (*See* 3/22/21 Order at 10-12); *see also Centurion Props.*, 375 P.3d

5   at 657-58 (applying *Trask*).  The *Trask* factors ask the court to evaluate:  (1) the extent to

6   which the transaction was intended to benefit the plaintiff; (2) the foreseeability of harm

7   to the plaintiff; (3) the degree of certainty that the plaintiff suffered injury; (4) the

8   closeness of the connection between the defendant's conduct and the injury; (5) the

9   policy of preventing future harm; and (5) the extent to which the profession would be

10  unduly burdened by a finding of liability.  *Centurion Props.*, 375 P.3d at 657-58.  The

11  first factor is the "'primary inquiry' in determining liability to third parties."  *Id.* at 658

12  (quoting *Stewart Title Guar. Co. v. Sterling Sav. Bank*, 311 P.3d 1, 3 (Wash. 2013)).

13          First, as it did in its March 22, 2021 order, the court concludes that the OCIP and

14  Marsh's appointment as administrator of the OCIP were intended, at least in part, to

15  benefit Matcon.  (*See* 3/22/21 Order at 11.)  As the Washington Court of Appeals has

16  recognized,

17          It is not an uncommon practice in construction contracts for the owner to
            agree to purchase insurance to protect the interests of some or all of the
18          contractors, subcontractors, and materialmen.  An agreement to insure is an
            agreement to provide both parties with the benefit of insurance regardless of
19          the cause of the loss (excepting wanton and willful acts).

20  *W. Wash. Corp. of Seventh-Day Adventists v. Ferrellgas, Inc.*, 7 P.3d 861, 870 (Wash. Ct.

21  App. 2000) (quoting *Ind. Erectors, Inc. v. Trs. of Ind. Univ.*, 686 N.E. 2d 878, 880-81

22  (Ind. App. 1997)).  Indeed, the OCIP Manual defines the OCIP as "[a] coordinated master

insurance program under which Commercial General Liability and Excess Liability are procured or provided on a project basis *for Enrolled Parties* for losses arising out of covered operations and completed operations at the OCIP Project Site."  (OCIP Manual at 5 (emphasis added).)  Here, Matcon was one of many subcontractors enrolled in the OCIP, which was purchased by the owner of the Project and administered by Marsh.  Accordingly, the court finds that the first *Trask* factor has been met.

Second, the court concludes that it was foreseeable under the second *Trask* factor that Matcon could suffer harm if Marsh did not comply with its duties of reasonable skill, ordinary care, diligence, and good faith in carrying out the instructions of its clients Project Stewart and Westbank in reporting insurance claims to the OCIP insurers.  It is foreseeable that a failure to report Matcon's insurance claims, once they were approved by Marsh's clients, would result in harm to Matcon.

With respect to the third and fourth *Trask* factors, the court concludes that Matcon has produced evidence from which a jury could find that Matcon suffered an injury that was closely connected to Marsh's conduct.  Marsh contends that no injury can be found because it is undisputed that it did not receive approval from Project Stewart to report the duct bank and cement claims until February 2019.  (*See* Matcon Resp. at 19 n.9; *see also* Marsh MSJ at 19-21.)  Evidence in the record, however, shows that although Marsh requested and received approval from Project Stewart in February 2019 to report the duct bank and cement claims to Houston, it reported only the claims made by Project Stewart and Graham; it did not report the claims reported by Matcon.  (*See* 5/16/22 Cordova Decl. ¶ 34, Exs. 26-27.)  In addition, evidence in the record shows that Project Stewart's

1   Claims Representative, Mr. Fankhauser, recommended that Marsh report Matcon's

2   claims to Houston as early as November 9, 2018—but Marsh apparently took no action

3   on that recommendation.  (*See* 6/6/22 Williams Decl. ¶ 7, Ex. D; Day Decl. ¶ 5.)  Matcon

4   points to evidence that it incurred over $300,000 in attorneys' fees and costs because no

5   insurer appeared to defend it against Graham's claims.  (*See* Matcon MSJ at 10 (citing

6   Heath Decl. (Dkt. # 106) ¶ 3; Matcon Reply at 5 (citing 6/10/22 Williams Decl. ¶ 3, Ex.

7   A (invoices produced to Marsh on April 19, 2021).)  The court concludes that a

8   reasonable jury could find that Marsh breached its duty to comply with its clients'

9   instructions when it failed to report Matcon's claims in November 2018 and when it

10   reported only Graham and Project Stewart's OCIP claims relating to the duct bank and

11   cement damages in February 2019 and did not report those made by Matcon.

12          Finally, the court concludes, with respect to the fifth and sixth *Trask* factors, that a

13   finding that Marsh owed third-party duties to Matcon would be consistent with the policy

14   of preventing future harm and would not unduly burden Marsh's profession.  As

15   Magistrate Judge Fricke recognized in her Report and Recommendation, the OCIP and

16   the contracts entered into pursuant to the OCIP

17          were part of the web of insurance coverage that was intended by the owner
            to manage financial risk, keep the project moving forward with effective
18          management of disputes and delays, and protect the owner and all
            participants in the project from being financially devastated by events during
19          construction.

20   (*See* 3/22/21 Order at 12 (quoting R&R at 16).)  The court concludes that it would not

21   unduly burden administrators of OCIPs, such as Marsh, to hold them accountable to

22

1   OCIP enrollees for complying with duties of reasonable skill, ordinary care, diligence,

2   and good faith in carrying out the instructions of their clients.

3         Thus, having considered the *Trask* factors, the court concludes that Marsh owed

4   Matcon duties of reasonable skill, ordinary care, diligence, and good faith in carrying out

5   the instructions of Project Stewart and Westbank.  Therefore, the court DENIES Marsh's

6   motion for summary judgment to the extent it seeks a ruling that it owed no duty to

7   Matcon.

8               *b.*      *Breach*

9         The parties also cross-move on whether Marsh breached any duty to Matcon.

10   (Marsh MSJ at 17-22; Matcon MSJ at 12-13.)  As the court noted above, evidence in the

11   record, viewed in the light most favorable to Matcon, demonstrates that although

12   Westbank approved Marsh to report claims relating to the duct bank and cement damages

13   to Houston in February 2019, Marsh in fact reported only the claims made by Graham

14   and Project Stewart; it did not report Matcon's claims to Houston.  (*See* 5/16/22 Cordova

15   Decl. ¶ 33, Ex. A-25; *id.* ¶ 34, Exs. 26-27.)  In addition, as noted above, evidence in the

16   record, again viewed in the light most favorable to Matcon, shows that Mr. Fankhauser,

17   recommended that Marsh report Matcon's claims to Houston as early as November 9,

18   2018.  (*See* 6/6/22 Williams Decl. ¶ 7, Ex. D; Day Decl. ¶ 5.)

19         At the same time, whether Marsh's failure to report Matcon's claims constitutes a

20   breach turns on whether Matcon's submissions to the OCIP portal were actually "claims"

21   under the OCIP.  That issue cannot be decided at summary judgment, however, because

22   the record contains evidence from which the jury could find that correspondence between

1   the general contractor and a subcontractor does not rise to the level of a "claim" under the

2   OCIP—particularly absent a showing of damage greater than the $25,000 deductible

3   chargeback.  (*See* 5/16/22 Cordova Decl. ¶ 22; Chaplin Decl. ¶ 6.)  Accordingly, the

4   court DENIES both parties' motions for summary judgment regarding whether Marsh

5   breached its duty to Matcon.

6           c.      *Damages*

7           Finally, Marsh moves for summary judgment on Matcon's negligence claim on the

8   ground that Matcon has "no evidence of any damages."  (Marsh MSJ at 22-25.)  As

9   discussed above, however, Matcon has produced evidence that, viewed in the light most

10  favorable to Matcon, demonstrates that it incurred attorneys' fees that it otherwise would

11  not have incurred had Marsh forwarded its claims to Houston either in November 2018 or

12  in February 2019.  (*See* Matcon MSJ at 10 (citing Heath Decl. (Dkt. # 106) ¶ 3; Matcon

13  Reply at 5 (citing 6/10/22 Williams Decl. ¶ 3, Ex. A (invoices produced to Marsh on

14  April 19, 2021).)  Accordingly, the court DENIES Marsh's motion for summary

15  judgment to the extent it seeks an order that Matcon has "no evidence of any damages."

16  (Marsh MSJ at 22.)  Because, as discussed above, there is a dispute of fact regarding

17  whether Marsh breached its duty, the court also DENIES Matcon's motion for summary

18  judgment to the extent it seeks an order that it suffered "some" damage as a result of

19  Marsh's actions.

20          In sum, the court GRANTS Matcon's motion for summary judgment to the extent

21  it seeks an order that Marsh owed it a duty to exercise reasonable skill, care, diligence,

22  and good faith in carrying out the instructions of its clients.  The court DENIES Matcon's

1    motion for an order on summary judgment that Marsh breached this duty as a matter of

2    law and that the breach caused damage to Matcon.  The court also DENIES Marsh's

3    motion for summary judgment on the negligence claim Matcon asserts against it.

4    **C.     CFSIC's Motion for Summary Judgment**

5          CFSIC moves for summary judgment on Matcon's claims for declarations that an

6    Errors and Omissions Liability Policy issued by CFSIC (the "CFSIC Policy"):

7    (1) provides indemnity coverage for the claims Graham asserted against Matcon in the

8    Underlying Lawsuit and (2) obligates CFSIC to reimburse Matcon for its pre- and

9    post-tender attorneys' fees and costs incurred in the Underlying Lawsuit.  (*See generally*

10   CFSIC MSJ; *see also* Reiss Decl. ¶ 3, Ex. A ("CFSIC Policy").)  It argues (1) that the

11   CFSIC Policy does not provide indemnity coverage for Graham's counterclaims against

12   Matcon; (2) even if it did, the indemnity issue is not ripe for adjudication; and (3) Matcon

13   waived its claim for pre- and post-tender fees and costs.  (*See generally* CFSIC MSJ.)

14   Matcon opposes the motion.  (*See* CFSIC Resp.)  Below, the court sets forth additional

15   factual background relevant to CFSIC's motion and then evaluates that motion.

16          1.     Additional Factual Background

17          CFSIC issued an Errors and Omissions Liability Policy to Matcon that was

18   effective May 18, 2018, through May 18, 2019.  (CFSIC Policy.)  The CFSIC Policy is

19   not part of the OCIP.  (*See* 2d Am. Compl. ¶ 10.)  In relevant part, the CFSIC Policy

20   provides:

21         We will pay, in excess of the Deductible shown in the Declarations, those
           sums the insured becomes legally obligated to pay as "damages" or "cleanup
22         costs" because of a "wrongful act" to which this insurance applies.

(CFSIC Policy at 46. [9])  It defines "Wrongful Act" as meaning "an act, error or omission in the rendering or failure to render 'professional services' by any insured covered under the Insuring Agreement of the Errors and Omissions Liability Coverage Part (EN0025)." (*Id.* at 40.)  It defines "Professional Services" as meaning "those functions performed for others by you or by others on your behalf that are related to your practice as a consultant, engineer, architect, surveyor, laboratory or construction manager." (*Id.* at 39.)

On August 7, 2019, Matcon tendered Graham's counterclaims in the Underlying Lawsuit to CFSIC.  (Reiss Decl. ¶ 4, Ex. B.)  CFSIC "promptly" opened a claim and initiated its coverage investigation.  (*Id.* ¶ 4.)  On September 12, 2019, CFSIC agreed to defend Matcon in the Underlying Lawsuit subject to a reservation of rights.  (*Id.* ¶ 5, Ex. C ("Sept. 12 Letter").)  In its letter, it noted that

> [a]ccording to [Graham's] Counterclaims, from the outset, [Matcon] failed to timely and properly perform excavation and shoring work pursuant to the terms of its subcontract with Graham, and the design it provided for such work failed to meet the degree of judgment and skill ordinarily possessed and exercised by a similarly situated design professional of good standing practicing in the area.

(*Id.* at 3; *see also id.* (noting that Graham alleged that Matcon's design of certain tie-back anchors was deficient).)

On November 8, 2019, Matcon requested reimbursement of pre- and post-tender attorneys' fees totaling $152,252.38 that it had incurred in the defense of Graham's counterclaims.  (Reiss Decl. ¶ 6, Ex. D at 1-2.)  Matcon's attorneys attempted

---

[9] The court cites to the page numbers in the ECF header when citing to the CFSIC Policy.

1   unsuccessfully to follow up with counsel for CFSIC "'multiple times' throughout the

2   winter of 2019/2020" regarding Matcon's demand for pre-tender attorney's fees.  (6/6/22

3   Harper Decl. (Dkt. # 115) ¶ 5.)  In April 2020, CFSIC sent Matcon an invoice for a

4   $10,000 deductible but did not respond to Matcon's demand for reimbursement of its

5   attorney's fees.  (*See id.* ¶ 6, Ex. B.)  On June 22, 2020, Matcon sent a letter to CFSIC in

6   which it proposed to resolve its claim against CFSIC for pre- and post-tender fees, but

7   threatened that it would join CFSIC to this lawsuit if it did not respond to the proposal

8   before the court's June 26, 2020 deadline to add additional parties.  (*Id.* ¶ 7, Ex. C.)

9         CFSIC responded on July 14, 2020—eighteen days after Matcon moved to amend

10  its complaint to add CFSIC and Marsh to this lawsuit.  (*Id.* ¶ 7, Ex. E; *see* Mot. to Amend

11  (Dkt. # 27).)  It stated that it was willing to reimburse $15,364.29 in "attorney's fees and

12  costs incurred between the date the claims were filed against Matcon and the date

13  [CFSIC] assigned counsel for Matcon."  (Reiss Decl. ¶ 6, Ex. D, at 2.)  It informed

14  Matcon that the payment was "not conditioned on any release of claims" and requested a

15  "W-9, specific payee information, and the address to whom the check should be sent."

16  (*Id.*)  It also requested additional information about the expert costs that Matcon was

17  seeking.  (*Id.*)  Matcon did not respond to CFSIC's letter and filed its second amended

18  complaint on July 21, 2020.  (*Id.* ¶ 7; *see* 2d Am. Compl.)

19        On August 16, 2021, CFSIC sent a settlement proposal to Matcon regarding its

20  July 14, 2020 offer to pay $15,364.29 in pre-tender defense fees.  (Colito Decl. (Dkt.

21  # 94) ¶ 3, Ex. 2.)  Matcon once again did not respond to CFSIC's offer.  (*Id.* ¶ 3.)

22

1        2.      Indemnity

2        CFSIC argues that it is entitled to summary judgment on Matcon's claim seeking a

3   declaration that the CFSIC Policy provides indemnity coverage for the claims asserted

4   against Matcon in the Underlying Lawsuit either because (1) Matcon's own testimony

5   reveals that the Underlying Lawsuit did not involve any design issues within the scope of

6   the Errors and Omissions coverage or (2) the indemnity claim is not ripe for adjudication.

7   (CFSIC MSJ at 11-14 (quoting Colito Decl. ¶ 8, Ex. 6 ("Sleight Matcon 30(b)(6) Dep.").)

8        The court considers the ripeness question first.  Matcon has repeatedly represented

9   to the parties in discovery and to the court in its filings that its indemnity claims are not

10  ripe for adjudication because the Underlying Lawsuit has not yet resolved.  As one

11  example, CFSIC points to Matcon's response to its Interrogatory No. 2:

12       **INTERROGATORY NO. 2:**  Please describe all facts supporting your
         claim that the CFSIC provides indemnity coverage for the claims asserted
13       against Matcon in the Underling Lawsuit.
         . . .

14       **ANSWER:**
15       . . .
         Subject to and without waiving these objections, Matcon responds that a
16       determination of [CFSIC's] duty to indemnify is not ripe because the
         Underlying Lawsuit has not been resolved.  *See Hayden v. Mutual of*
17       *Enumclaw Ins. Co.*, 141 Wn.2d 55, 64, 1 P.3d 1167 (2000) ("The duty to
         indemnify hinges on the insured's **actual liability to the claimant** and actual
18       coverage under the policy.") (emphasis added); *Safeco Ins. Co. of America
         v. McGrath*, 42 Wn. App. 58, 62, 708 P.2d 657 (1985) ("An insurer's duty to
19       indemnity its insured arises **only where the injured party ultimately
         prevails** on facts which fall within the policy coverage.") (emphasis added).

20  (Colito Decl. ¶ 5, Ex. 4, at 3-4 (emphasis in original).)  Matcon has not supplemented its

21  responses to CFSIC's discovery requests.  (Colito Decl. ¶ 7.)  Moreover, Matcon made

22

1    the same representation to the court in its joint motion (with Marsh) to continue the trial

2    date in this matter.  (Jt. Mot. at 5 (arguing that a continuance was necessary because the

3    Underlying Lawsuit was near resolution and without a continuance, "Matcon's claims

4    relating to indemnity coverage will not be ripe.").)  Matcon does not address, explain, or

5    distinguish its prior assertions that the ripeness of its indemnity claims depends on the

6    resolution of the Underlying Lawsuit.  (*See generally* CFSIC Resp.)  Rather, it states

7    (again) that a final settlement of the Underlying Lawsuit is pending only the resolution of

8    issues between Graham and Project Stewart, and argues, citing Defendants' affirmative

9    defenses, that a "judicial unraveling of the parties' competing claims, rights, and

10   obligations presents an actual and justiciable controversy."  (*Id.* at 5 (citing 9/16/21

11   Sleight Decl. ¶¶ 5-7.); *id.* at 9 (citing Houston Ans. (Dkt. # 33) at 11; CFSIC Ans. (Dkt.

12   # 56) at 10; Marsh Ans. (Dkt. # 73) at 9).)

13           The court agrees with CFSIC that Matcon cannot argue "that on the one hand, it

14   cannot engage in discovery [on indemnity] because the underlying matter has not

15   resolved, and on the other, that dismissal is unwarranted, because the underlying matter is

16   nearly resolved."  (CFSIC Reply at 7.)  The court will hold Matcon to the position that it

17   has repeatedly taken in this litigation that its indemnity claims are not ripe for

18   adjudication because the Underlying Lawsuit has not yet resolved.

19           Even if Matcon's indemnity claims were ripe, the court nevertheless concludes

20   that summary judgment on those claims would be warranted.  "The duty to indemnify

21   hinges on the insured's actual liability to the claimant and actual coverage under the

22   policy.  The duty to defend, on the other hand, exists merely if the complaint contains any

1   factual allegations which could render the insurer liable to the insured under the policy."

2   *Hayden v. Mut. of Enumclaw Ins. Co.*, 1 P.3d 1167, 1171-72 (Wash. 2000).

3   The parties do not dispute that the CFSIC Policy covers only errors or omissions in

4   Matcon's rendering of design, consulting, or engineering work for Graham.  (*See* CFSIC

5   MSJ at 12-14; CFSIC Resp. at 6-7; *see also* CFSIC Policy at 39-40, 46.)  As evidence

6   that Graham's counterclaims in the Underlying Lawsuit do not relate to these services,

7   CFSIC points to testimony by Matcon's Federal Rule of Civil Procedure 30(b)(6)

8   deponent, attorney Scott Sleight,[10] that the Underlying Lawsuit does not involve issues

9   with Matcon's design work. (CFSIC MSJ at 13 (quoting Sleight Matcon 30(b)(6) Dep. at

10  111:15-25, 112:1-10; and citing *id.* at 111-116).)  Thus, by Matcon's own admission,

11  Matcon has no "actual liability" to Graham based on its design services that would trigger

12  CFSIC's duty to indemnify.  *Hayden*, 1 P.3d at 1171-72.

13         Matcon first argues that it is entitled to indemnity because Graham's

14  counterclaims included allegations of faulty design.  (*See* CFSIC Resp. at 2, 7 (citing

15  Graham Counterclaims).)  Although it is true that CFSIC's duty to *defend* was triggered

16  by the allegations in Graham's complaint—as CFSIC acknowledged in its Sept. 12

17  Letter—its duty to *indemnify* must be based on Matcon's "actual liability" to Graham

18  rather than Graham's allegations.  *See Hayden*, 1 P.3d at 1170-72.  Second, Matcon

19  contends that Graham's Rule 30(b)(6) deponent testified that Graham's counterclaims

20  against Matcon in the Underlying Lawsuit were based on Matcon's allegedly faulty

21

22  [10] Mr. Sleight is one of Matcon's attorneys of record in the Underlying Lawsuit.  (9/16/21 Sleight Decl. ¶ 2.)

1   design.  (CFSIC Resp. at 7 (citing 6/6/22 Harper Decl. ¶ 3, Ex. A ("Graham 30(b)(6)

2   Dep.") at 67:5-7).)  Matcon, however, misrepresents Graham's deponent's testimony.  To

3   the contrary, in the very pages Matcon submitted with its response, Graham testified that

4   it did "not have an opinion" on Matcon's design; and the specific excerpt Matcon cites

5   was part of a discussion in which Graham's deponent, in his own words, "speculat[ed]"

6   about how the duct bank strikes could have been avoided.  (*See* CFSIC Reply at 5-6

7   (quoting Graham 30(b)(6) Dep. at 66:5-8, 66:11-67:7).)  Thus, Matcon fails to meet its

8   burden to produce evidence that would demonstrate a genuine issue of material fact

9   regarding CFSIC's duty to indemnify.  For the foregoing reasons, the court GRANTS

10  CFSIC's motion for summary judgment on Matcon's indemnity claims.

11          3.      Pre-tender Attorneys' Fees and Costs

12          CFSIC contends that Matcon waived its claim for pre-tender attorney's fees and

13  costs by refusing to accept CFSIC's offer to pay it $15,364.29 rather than the

14  $152,353.38 that Matcon requested.  (CFSIC MSJ at 17-19.)  In Washington, a waiver

15  occurs when there is an "intentional and voluntary relinquishment of a known right, or

16  such conduct as warrants an inference of the relinquishment of such right." *Bowman v.*

17  *Webster*, 269 P.2d 960, 961-62 (Wash. 1952).  The person waiving the right "must intend

18  to relinquish such right, advantage, or benefit; and his actions must be inconsistent with

19  any other intention than to waive them." *Id.*

20          CFSIC argues that the court must infer that Matcon's refusal to accept CFSIC's

21  offer constitutes a waiver of Matcon's right to pursue its claim for pre-tender attorney's

22  fees and costs.  (*See* CFSIC MSJ at 17-19.)  The court declines to do so.  CFSIC directs

1   the court to no authority for the proposition that a refusal to accept an offer, without

2   more, must be viewed as a waiver.  (*See id.*; *see* CFSIC Reply at 9-11.)  Furthermore, at

3   the summary judgment stage, the court must draw all reasonable inferences in the non-

4   moving party's favor—here, Matcon.  *Scott*, 550 U.S. at 378.  The court concludes that a

5   reasonable jury could find that Matcon's conduct in pursuing this litigation is inconsistent

6   with the intent to waive its claim for pre-tender attorney's fees and costs.  *See Bowman*,

7   269 P.2d at 962.  Accordingly, the court DENIES CFSIC's motion for summary

8   judgment on Matcon's claim for pre-tender attorney's fees and costs.

9   **D.   Houston's Motion for Summary Judgment**

10        Houston moves for summary judgment on Matcon's insurance bad faith, breach of

11  contract, IFCA, and CPA claims.  (*See generally* Houston MSJ.)  It argues that it did not

12  learn of Matcon's OCIP Portal submissions until October 2019; that Matcon never

13  tendered its claims for defense and indemnity; and that Matcon cannot establish the

14  damages element of its claims.  (*Id.*)  Matcon agrees that Houston did not receive the

15  OCIP Portal submissions but argues that it tendered its claims to Houston in October

16  2019, that Houston failed to act in good faith to adjust its claims thereafter, and that it has

17  produced evidence of damages in the form of attorney's fees and costs it incurred in the

18  Underlying Lawsuit as a result of being required to defend itself.  (*See generally* Houston

19  Resp.)  Below, the courts sets forth additional factual background relevant to the dispute

20  between Matcon and Houston, then analyzes Houston's motion for summary judgment.

21  //

22  //

1          1.      Additional Factual Background

2          The parties agree that Houston did not receive any of Matcon's four OCIP Portal

3    submissions from Marsh or any other party until October 2019.  (Day Decl. ¶ 5; Houston

4    Resp. at 3.)  Houston did, however, receive copies of submissions that Project Stewart

5    and Graham made through the OCIP Portal in early 2019 and proceeded to timely adjust

6    those claims.  (Day Decl. ¶ 6; *id.* Ex. A (acknowledging Project Stewart's January 2019

7    submission of a claim concerning damage caused by Matcon's duct bank strikes); *id.* Exs.

8    B-E (documents regarding Graham's duct bank and cement claims).)  Houston eventually

9    resolved Project Stewart's and Graham's claims.  (*Id.* ¶¶ 8, 14.)

10         On October 7, 2019, Matcon sent a notice of intent to sue to Houston, Marsh, and

11   others.  (5/16/22 Philip Decl. ¶ 16, Ex. 15 ("Notice of Intent").)  In that notice, Matcon

12   stated that it intended to assert violations of the IFCA against Houston and the other

13   OCIP insurers; alleged that the insurers had "unreasonably denied Matcon's claim for

14   coverage" through their silence in response to Matcon's OCIP Portal submissions; and

15   informed the insurers that it "has suffered, and continues to suffer significant harm as a

16   result of the OCIP insurers' failures."  (Notice of Intent at 2-4.)  It further noted that its

17   professional liability carrier (that is, CFSIC) was defending it under a reservation of

18   rights and under a $1 million wasting policy, in which the "indemnity limit erodes with

19   the insurer's payment of defense costs."  (*Id.* at 4.)  Matcon attached copies of its four

20   OCIP Portal submissions to the notice.  (*See id.*, Exs. C-F.)

21         On November 13, 2019, counsel for Houston emailed counsel for Matcon, stating

22   that he had been "retained to represent [Houston] with respect to the above-referenced

1   claim tendered by [Matcon]," that Houston "acknowledged receipt of this claim," and

2   that he would be "sending a more detailed letter in the near future." (6/10/22 Philip Decl.

3   (Dkt. # 122) ¶ 3, Ex. 20, at 4-5.) On December 10, 2019, Houston's attorney again

4   emailed Matcon's attorney, this time to "sort out the issues regarding notice" and to seek

5   "assistance in clarifying the allegations in" Matcon's Notice of Intent. (*Id.*) Matcon's

6   attorney clarified on December 17, 2019, that Matcon had never received

7   acknowledgement of the tenders it made through the OCIP Portal from anyone. (*Id.* at 1.)

8        On June 17, 2020, over eight months after Matcon sent its Notice of Intent,

9   Houston sent a letter to Matcon to "discuss [Houston's] coverage position with respect to

10  the claims tendered by Matcon." (6/6/22 Williams Decl. ¶ 3, Ex. A ("June 17 Letter").)

11  In that letter, Houston stated that it "agree[d] that certain claims are covered" and would

12  "agree to reimburse Matcon for defense costs associated with the defense of covered

13  claims." (*Id.* at 1; *see also id.* at 10 (stating that Houston found that the "potential for

14  coverage exists" and that Houston would "therefore agree to indemnify Matcon for

15  covered claims and reimburse Matcon for defense costs related to the defense of covered

16  claims," subject to a reservation of rights).)

17       On July 15, 2020, Houston sent a second letter to Matcon to "supplement" the

18  June 17 Letter. (6/6/22 Williams Decl. ¶ 4, Ex. B ("July 15 Letter").) It stated that it

19  would "also agree, in addition to agreeing to reimburse Matcon for past defense costs

20  associated with the defense of covered claims, to assume Matcon's defense of the claims

21  [Graham] made against it due to its work on [the Project]," subject to a reservation of

22  rights. (*Id.* at 1.)

1       On July 16, 2020, Matcon responded to Houston's June 17 and July 15 Letters.

2  (6/6/22 Williams Decl. ¶ 5, Ex. C ("July 16 Letter").)  Matcon informed Houston that it

3  rejected Houston's "belated offers" as untimely because Houston had "already

4  unreasonably breached its duty to defend."  (*Id.* at 1-2.)

5       2.       Breach of Contract, IFCA, and CPA Claims

6       Houston contends that Matcon's breach of contract, insurance bad faith, IFCA,

7  and CPA claims fail as a matter of law because Houston did not receive Matcon's tenders

8  when Matcon submitted them to the OCIP Portal.  (*See* Houston MSJ at 9-12.)  But

9  Matcon does not dispute that Houston did not receive the OCIP submissions when

10  Matcon submitted them and bases it claims, instead, on Houston's failure to respond to

11  the October 2019 Notice of Intent.  (*See* Houston Resp. at 6-13.)  Houston then argues in

12  reply that it is entitled to summary judgment on Matcon's claims because the Notice of

13  Intent was not a valid tender of claims.  (*See* Houston Reply at 3-6.)  Thus, a threshold

14  issue is whether Matcon's October 2019 Notice of Intent constituted a "tender" that

15  would invoke Houston's defense obligation under Washington law.  (*See* Houston Resp.

16  at 11-12; Houston Reply at 3-5.)

17       "The rule in Washington is clear:  '[A]n insurer's duty to defend does not arise

18  unless the insured specifically asks the insurer to undertake the defense of the

19  action . . . .  [A]n insurer cannot be expected to anticipate when or if an insured will make

20  a claim for coverage; the insured must affirmatively inform the insurer that its

21  participation is desired.'"  *Snohomish Cnty. v. Allied World Nat'l Assurance Co.*, 276 F.

22  Supp. 3d 1046, 1053 (W.D. Wash. 2017) (quoting *Unigard Ins. Co. v. Leven*, 983 P.2d

1    1155, 1160 (Wash. Ct. App. 1999)).  There is no requirement, however, that an insured

2    use particular words or phrases to create a "tender."  *Id.* at 1054.  Rather, "[t]he concept

3    of 'tender' merely connotes a certain form of notice from an insured to its insurer,

4    communicating its belief that the insurer's obligations of coverage and defense have been

5    triggered by an event or series of events and inviting the insurer's participation."  *Id.*

6    　　　　Houston argues that Matcon's October 2019 Notice of Intent cannot be considered

7    a "tender" because it did not expressly request that Houston defend or indemnify it.

8    (Houston Reply at 4.)  Rather, according to Houston, the Notice of Intent "was purely a

9    statutory prerequisite for asserting [Matcon's] IFCA claim."  (*Id.*)  Houston's position,

10   however, is undercut by its attorney's correspondence with Matcon, which indicates that

11   Houston itself interpreted Matcon's Notice of Intent as a tender of claims.  First, in his

12   November 13, 2019 email to Matcon's attorney, Houston's counsel stated that he had

13   been "retained to represent [Houston] with respect to the above-referenced *claim*

14   *tendered* by [Matcon]" and noted that Houston "acknowledged receipt" of the claim.

15   (*See* 6/10/22 Philip Decl. Ex. 20, at 4-5 (emphasis added).)  Second, in his June 17 Letter,

16   counsel stated that he was writing to "discuss [Houston's] coverage position with respect

17   to the *claims tendered* by Matcon."  (June 17 Letter at 1 (emphasis added).)  Thus, it is

18   clear from the record that Houston understood the Notice of Intent to be a tender of

19   claims.  *See Osborne Constr. Co. v. Zurich Am. Ins. Co.*, 356 F. Supp. 3d 1085, 1095

20   (W.D. Wash. 2018) (concluding that plaintiff's letter was a tender where the insurer

21   referred to the letter as a "tender" in its response to the plaintiff).  Based on Houston's

22   own statements, the court concludes that a reasonable jury could find that the Notice of

1   Intent constituted a tender of claims.  Houston's motion for summary judgment on

2   Matcon's claims fails, therefore, to the extent it is based on its contention that Matcon

3   never submitted a valid tender.

4          Next, Houston briefly argues that it acted reasonably after it received Matcon's

5   Notice of Intent.  (*See* Houston Reply at 5.)  It offers no explanation, however, for why it

6   took over eight months to respond to Matcon's claims and over nine months to finally

7   offer a defense.  (*See generally* Houston MSJ; Houston Reply.)  As Matcon points out, "a

8   failure to promptly respond to a demand for coverage can constitute an unreasonable

9   denial of benefits, even if the insurer eventually offers coverage."  (Houston Resp. at 10

10  (quoting *Rushforth Constr. Co. v. Wesco Ins. Co.*, No. C17-1063JCC, 2018 WL 1610222,

11  at *4 (W.D. Wash. Apr. 3, 2018) (concluding insurer acted in bad faith where it failed to

12  act on insured's claim for ten months)).)  Thus, to the extent Houston moves separately

13  for summary judgment on Matcon's breach of contract, insurance bad faith, IFCA, and

14  CPA claims on the ground that Matcon cannot prove bad faith, the court denies the

15  motion.

16         Finally, Houston also contends that it is entitled to summary judgment because

17  Matcon cannot prove that it was damaged by Houston's conduct.  It asserts that Matcon

18  failed to identify its damages for breach of contract, insurance bad faith, and violations of

19  the IFCA and CPA with particularity in response to Houston's discovery requests.

20  (Houston MSJ at 12 (citing 5/16/22 Philip Decl. ¶¶ 19-22, Exs. 16-19 (discovery

21  responses and correspondence)).)  Matcon responds that it identified $337,550.83 in

22  attorney's fees and costs that it incurred in the Underlying Lawsuit as a result of

1    Houston's failure to offer it a defense.  (Houston Resp. at 13-14 (quoting 5/16/22 Philip

2    Decl., Ex. 18).)  Although Houston argues that it should not be held to these damages

3    because Matcon rejected its offer of reimbursement in its June 17 Letter and offer to

4    defend in its July 15 Letter (*see* Houston Reply at 7), the court agrees with Matcon that it

5    was not required to accept those belated offers.  *See, e.g.*, *Rushforth*, 2018 WL 1610222,

6    at *4 (noting that the insured "had the *option* of allowing [the insurer] to assume a

7    defense, but was not *required* to do so") (emphasis in original).  For all of the foregoing

8    reasons, the court DENIES Houston's motion for summary judgment.

9                              **IV.    CONCLUSION**

10          For the foregoing reasons, the court ORDERS as follows:

11          1.    Matcon's motion for summary judgment (Dkt. # 105) is GRANTED in part

12   and DENIED in part.  The court GRANTS the motion to the extent it seeks an order that

13   Marsh owed it a duty to exercise reasonable skill, care, diligence, and good faith in

14   carrying out the instructions of its clients.  The court DENIES the motion to the extent it

15   seeks an order that Marsh breached this duty as a matter of law and that that breach

16   caused damage to Matcon;

17          2.    Marsh's motion for summary judgment (Dkt. # 92) is DENIED;

18          3.    CFSIC's motion for summary judgment (Dkt. # 93) is GRANTED in part

19   and DENIED in part.  The court DISMISSES Matcon's claim for a declaration that the

20   CFSIC Policy provides indemnity coverage for the claims Graham asserted against

21   Matcon in the Underlying Lawsuit; and

22   *//*

1    4.    Houston's motion for summary judgment (Dkt. # 99) is DENIED.

2    Dated this 14th day of July, 2022.

3

4    _____

5    JAMES L. ROBART
     United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 42